WILLIAM H. SWASEY, executor, vs. RICHARD T. JAQUES
& others.

Essex. Nov. 5, 1886. — Feb. 26, 1887. DEVENS, W. ALLEN, & HOLMES,
JJ., absent.

Under the Pub. Sts. c. 127, § 34, and c. 156, §§ 5, 6, the Probate Court has jurisdic-
tion of a petition by the executor of a will for instructions as to the construction
of the will; and from the decree of that court thereon any person aggrieved
may appeal to this court.

A testator by his will gave pecuniary legacies to certain persons, and provided
that, if any of them "shall die before my decease, I give the sums, which I have
given to them respectively, respectively to those persons living at the time of
my decease, who shall then be next of kin respectively of those of them whom I
may survive." One of these legatees died in the lifetime of the testator, leaving
as his nearest relatives a brother and three nephews, sons of a deceased brother,
all of whom survived the testator. Held, that the brother of the legatee was
entitled to the legacy, to the exclusion of the nephews.

FIELD, J. This is a petition by an executor for the construc-
tion of a will. It was filed in the Probate Court, and a decree
there entered, from which an appeal has been taken to this court,
where the cause has been heard by a single justice and reported
to the full court.

In proceedings in the Probate Court upon the allowance of
an account of an executor, the court is necessarily confined to
the determination of those questions which are involved in the
allowance or disallowance of the account, and cannot give
directions for the future action of the executor. *Lincoln* v.
*Aldrich*, 141 Mass. 342. *New England Trust Co.* v. *Eaton*, 140
Mass. 532.

A bill in equity is the proper proceeding for obtaining the
instructions of the court upon the construction to be given to a
will. Jurisdiction in equity to hear and determine all matters
relating to trusts created by will was long ago conferred upon
the probate courts. Rev. Sts. c. 69, § 12, and Commissioners'
note. Gen. Sts. c. 100, § 22. Pub. Sts. c. 141, § 27. By the
St. of 1873, c. 224, § 3, "Probate courts in the several counties
may, concurrently with the Supreme Judicial Court, hear and
determine all matters arising under wills, in the same manner as

is now provided by law in relation to trusts created by will;" and by the St. of 1879, c. 183, § 1, " the Supreme Judicial Court and the probate courts in the several counties may, on petition, hear and determine all matters and questions arising under wills, provided, however, that any party aggrieved by the decision of the Probate Court thereon may appeal therefrom to the Supreme Judicial Court, as now provided by law." See Pub. Sts. c. 127, § 34; c. 156, §§ 5, 6, 11. The proceedings in the present case were authorized by, and are in accordance with, the St. of 1879, c. 183, § 1, and the Public Statutes. *Huntress* v. *Place*, 137 Mass. 409. *Wright* v. *White*, 136 Mass. 470.

By the tenth article of the will, the testatrix gave pecuniary legacies to certain persons; and provided that, if any of them " shall die before my decease, I give the sums, which I have given to them respectively, respectively to those persons living at the time of my decease, who shall then be next of kin respectively of those of them whom I may survive." Matilda Jaques, one of these legatees, died in the lifetime of the testatrix, leaving as her nearest relations a brother, Richard T. Jaques, and three nephews, sons of a deceased brother, all of whom survived the testatrix and are now living. The question is whether the words " next of kin " in the will mean nearest blood relations, or include all those relations who would take under the statute of distributions.

In England, this question was settled by *Withy* v. *Mangles*, 10 Cl. & F. 215. *Harris* v. *Newton*, 25 W. R. 228. *Halton* v. *Foster*, L. R. 3 Ch. 505. The case of *Withy* v. *Mangles* has been cited by this court in *Houghton* v. *Kendall*, 7 Allen, 72, and *Haraden* v. *Larrabee*, 113 Mass. 430. There are comments upon the case in *Houghton* v. *Kendall*, but the decision in *Houghton* v. *Kendall* is in accordance with late English decisions by courts inferior to the House of Lords, and these decisions must be held not to be in conflict with *Withy* v. *Mangles*.

In *Houghton* v. *Kendall*, a testator bequeathed to his daughter Sally the income of two thousand dollars, which was to remain in the hands of his executors; and provided that, at her decease, the sum remaining in their hands should be paid " over to the children who may be the surviving heirs of said Sally's body, to be divided in equal shares between them." Sally survived the

testator, and died leaving at her death one son and four grand-children, children of a deceased son.   The court say: "When the word 'heirs' is used in a gift of personalty, it should pri-marily be held to refer to those who would be entitled to take under the statute of distributions, and to indicate that they should take in the same manner and in the same proportions as if it had come to them as intestate estate of the person whose 'heirs' they are called."   It is unnecessary in the present case to consider under what circumstances the word "heirs" is to be construed to mean distributees of personalty.   See *Fabens* v. *Fabens*, 141 Mass. 395, 399; *Merrill* v. *Preston*, 135 Mass. 451; *Minot* v. *Harris*, 132 Mass. 528; *Sweet* v. *Dutton*, 109 Mass. 589.

*Wingfield* v. *Wingfield*, 9 Ch. D. 658, *In re Thompson's trusts*, 9 Ch. D. 607, and *Keay* v. *Boulton*, 25 Ch. D. 212, are decisions to the same effect as *Houghton* v. *Kendall*.   The distinction taken between these cases and *Withy* v. *Mangles* is that the word "heirs" in itself imports succession to property by death; and as the persons who are the heirs of any one deceased are desig-nated by law — which now is statutory law — the heirs must be either those persons who by law would succeed to the real estate, or those who would succeed to the personal estate, of the person whose heirs they are called, if that person had died intestate; and it is said that, if the property is personal, the inference is that those persons are meant who would succeed to personal estate if the owner had died intestate, and who have been some-times styled the statutory next of kin, or heirs of the personalty. But it is said that the words "next of kin" do not of themselves import "succession *ab intestato*," and, taken alone, mean noth-ing more than nearest blood relations; and that, unless there is something more in the will indicating that the testator intended statutory next of kin, or that the property should be distributed as intestate property, these words must have their customary meaning.   Our statute of distributions includes, among those who take, the husband or wife of the deceased, and permits representation.

The words "next of kin" are not used in the chapter of the Public Statutes concerning the distribution of the personal estate of intestates, but are used once in the chapter concerning the descent of real estate, which, with certain exceptions, regulates

the distribution of personal estate, and then the words are "next of kin in equal degree." But the words "next of kin" are used in other provisions of the statutes relating to the administration of estates, and apparently sometimes include all persons who take personal property as distributees of an intestate estate, and sometimes all such persons except the husband or wife. Pub. Sts. *c.* 125; *c.* 130, § 1; *c.* 135; *c.* 136, §§ 20, 26–28; *c.* 143, §§ 12, 13, 20, 23. The context and the subject matter must in each case determine the meaning of the words. There is no general provision that the personal estate of an intestate shall be distributed among the next of kin.

It is certainly difficult to distinguish between the expressions "next of kin," "nearest of kin," "nearest kindred," and "nearest blood relations," and primarily the words indicate the nearest degree of consanguinity, and they are perhaps more frequently used in this sense than in any other. What little recent authority there is beyond that of the English courts supports the English view; and, on the whole, we are inclined to adopt it. *Redmond* v. *Burroughs*, 63 N. C. 242. *Davenport* v. *Hassel*, Busb. Eq. 29. *Wright* v. *Methodist Episcopal Church*, Hoff. Ch. 202, 213. There is nothing in this will which controls or modifies the meaning of the words "next of kin."

The decree must be reversed, and a decree entered that the legacy of $500 given to Matilda Jaques be paid to Richard T. Jaques.

The details of the decree may be settled by a single justice, before whom counsel may be heard upon their application to be allowed counsel fees out of the fund.                    *So ordered.*

*H. I. Bartlett*, for Richard T. Jaques.

*D. L. Withington*, for the nephews of the testatrix.