BARBARA GUY, administratrix, vs. GEORGE C. JOHNSON.

Suffolk. February 11, 1983. — May 11, 1983.

Present: BROWN, KAPLAN, & GREANEY, JJ.

*Damages*, Wrongful death. *Minor*, Wrongful death. *Statute*, Construction.

The father of a nine year old child who had, in effect, abandoned connection with the child from the time the child was one year old, was not entitled by virtue of G. L. c. 229, § 1 (4), to share equally as "next of kin" in the distribution of settlement proceeds of an action for the wrongful death of the child, and thus the mother, who from birth had cared for and had had a close relationship with the child, properly received the proceeds under language of G. L. c. 229, § 2, expressing damages for wrongful death in terms of the fair value of the decedent to those entitled to recover. [759-761]

Discussion of decisions by courts in other jurisdictions which have considered the apparent conflict between provisions in a wrongful death statute adopting the compensatory principle of the recovery of damages, and related provisions concerning distribution of the recovery. [761-763]

PETITION for administration filed in the Probate Court for the county of Suffolk on July 19, 1974.

A proceeding for the allowance of the administratrix's account filed September 22, 1980, was heard by *Warner*, J.

*Harvey R. Peters* for the defendant.

*Jeremy A. Stahlin* for the plaintiff.

KAPLAN, J.  On April 25, 1974, Alfonza Johnson, aged nine years and eight months, was killed in an elevator accident on premises of the Boston Housing Authority. The mother, Barbara Guy, serving as administratrix of Alfonza's estate, commenced suit against those apparently responsi-

ble, claiming damages for wrongful death.[1]  The claim was settled, yielding a net recovery, including interest, of $37,889.47.  In her first and final account presented to the probate court, Barbara proposed to allocate $37,786.06 to herself, and $103.41 to George Johnson, Alfonza's father (Barbara's divorced husband) who had appeared in the accounting proceeding.  We may regard the award to him as merely nominal.  A probate judge, over George's objection, approved the allocation as part of the approval of Barbara's account.  George appeals from the judgment.  We affirm.

We read the judge's decision as an effort by him, despite some difficulties, as will be seen, to make coherent sense in the particular case of the statutes which describe the nature of the recovery for wrongful death and indicate how any recovery is to be distributed.  Since the coming in of a basic statutory reform in 1973 (by St. 1973, c. 699), the damages for wrongful death are no longer expressed in terms of the degree of culpability of the tortfeasor, but rather as the fair value of the decedent to those entitled to recover.  See G. L. c. 229, § 2.[2]  Another statutory provision describes the persons or classes of persons who figure as distributees of a wrongful death recovery — in our case the pertinent class is the decedent's next of kin, the mother and father.  See G. L. c. 229, § 1 (4).  The judge found, however, that the father had in effect abandoned connection with the child: from the time the child was a year old, the father had lived apart from the mother and child; had contributed virtually nothing to the child's support;[3] and had visited the child only sporadically, and but once after 1969 except for a couple of encounters during a two-week interval in 1973.  On the

---

[1] There was also a claim for conscious pain and suffering (G. L. c. 229, § 6) which need not be dealt with here.

[2] See Zabin & Connolly, The New Wrongful Death Act in Massachusetts Steps into the Twentieth Century, 58 Mass. L.Q. 345 (1973).

[3] In May, 1965, a Kentucky court directed George to pay $10 a week for the support of the child, and like provision was made in the divorce judgment of October, 1969.  From May, 1965, to the date of the child's death George made only one such support payment.

other hand, the mother had cared for the child since birth and the relationship between them was close and affectionate. The judge concluded that the child was without value to the father in the statutory sense, but of value to the mother. Accordingly, he approved the proposed payment of the settlement recovery to the mother, to the exclusion of the father.

This disposition appeals to reason and sympathy; it seems fair on its face. The father avoids all argument that it is not fair. He argues, instead, that by the words of the statute he is entitled to half the recovery. The argument has some strength, but we think it fails in the end. We must deal with the texts.[4]

General Laws c. 229, § 2, as amended by St. 1979, c. 164, § 1, states in principal part: "A person who (1) by his negligence causes the death of a person, or (2) by willful, wanton or reckless act causes the death of a person . . . shall be liable in damages in the amount of: (1) the fair monetary value of the decedent to the persons entitled to receive the damages recovered, as provided in section one, including but not limited to compensation for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered . . . ."[5] The "section one" (as amended by St. 1961, c. 166) referred to in this quoted text of § 2 deals with loss of life from defective ways, and casts on the governmental unit or person responsible for repairs, damages not exceeding $4,000 to be assessed with regard to the culpability of the defendant, and recovered by the administrator of the decedent "to the use of the following persons and in the following shares: —

---

[4] In what follows we are prepared to assume that a recovery through settlement is to be treated like one through completed litigation.

[5] Also recoverable under the next following clauses (2) and (3) are the reasonable funeral and burial expenses of the decedent, and punitive damages of not less than $5,000 where the decedent's death was caused by malicious, wilful, etc., conduct or gross negligence of the defendant.

"(1) If the deceased shall have been survived by a wife or husband and no children or issue surviving, then to the use of such surviving spouse.

"(2) If the deceased shall have been survived by a wife or husband and by one child or by the issue of one deceased child, then one half to the use of such surviving spouse and one half to the use of such child or his issue by right of representation.

"(3) If the deceased shall have been survived by a wife or husband and by more than one child surviving either in person or by issue, then one third to the use of such surviving spouse and two thirds to the use of such surviving children or their issue by right of representation.

"(4) If there is no surviving wife or husband, then to the use of the next of kin."

It will be observed that before the revision of § 2 in 1973, the theme of § 2 — degree of culpability — matched that of § 1.[6] It may be that during that regime a recovery under § 2 had inevitably to be distributed to the persons in the stated shares set out in § 1 (1)-(3) without regard to any other considerations. Perhaps it was also the case that in a subdivision (4) situation a distribution in equal shares had to be made to those in the class of next of kin, although there is no mention of shares in that subdivision.[7]

We can surmise that when § 2 was revised to introduce the compensatory principle of recovery, less than enough attention was paid to the compatibility of § 1. Possible inconsistencies or difficulties appear in meshing the provisions. Thus, suppose the death of a husband, leaving a wife and four grown children: if the decedent was living with and supporting the wife, but was wholly estranged from the children, who resided elsewhere, was the recovery, meas-

---

[6] Before the revision, § 2 provided for liability "in damages in the sum of not less than five thousand nor more than two hundred thousand dollars, to be assessed with reference to the degree of his [tortfeasor's] culpability and distributed as provided in section one." (As amended through St. 1972, c. 440, § 1.)

[7] We are not called on to decide either point.

ured by value, to pass one third to the wife and two thirds to the children, or should it belong to the wife alone? Suppose the estrangement was from two of the four children — what distribution then?

We do not attempt to lay down a formula to cover all conceivable cases, and confine ourselves to the present case of next of kin. It seems to us that § 1 should be respected to the extent that its subdivision (4) determines the presumptive takers, here the mother and father. But the purpose of § 2 should then take hold to deprive of recovery that one, the father, who is shown to have been dissociated from the decedent — who cannot justly claim that the decedent had any monetary value for him. The judge followed this line in the present case.[8]

This peculiar problem, resulting from occasional legislative oversight or maladroitness, is not new. It has arisen in other jurisdictions where the statute on wrongful death, adopting the compensatory principle, appeared to clash with related provisions speaking about the distribution of the recovery. The Supreme Judicial Court in *Richardson* v. *New York Cent. R.R.*, 98 Mass. 85, 89-90, noticed such an anomaly as far back as 1867: discussing the statutory arrangements in New York, the court remarked upon an evident conflict between the wrongful death statute, which was seemingly on a compensatory basis, and a connected intestacy law which would distribute the recovery by a conventional biological formula.[9]

Decisions attempting answers to the problem have not been uniform, for much must turn on the wording, interrelations, and history of the statutory provisions as well as on the facts of the particular cases. We find some decisions that hew to the very statutory text about distribution despite uncomfortable and even admittedly absurd results — absurd

---

[8] The question who is entitled to share in a recovery should of course have a bearing on the amount of a compensatory recovery.

[9] The precise question in the *Richardson* case was whether a Massachusetts administrator could sue here on the New York statutes.

if the primary aim is just compensation to the deserving survivors. See *Murphy* v. *Duluth-Superior Bus Co.,* 200 Minn. 345, 347-348 (1937); *Snedeker* v. *Snedeker,* 164 N.Y. 58, 63 (1900).[10] Other decisions have sought some reasonable accommodation. By way of example:[11] An explicit reference to the intestacy law could lead a court to accept that statute as defining the presumptive takers, but as still permitting the elimination of any such indicated class or person as to whom it was shown that they or he or she had no connection with the decedent that would justify a compensatory claim. See *Seymour* v. *Rossman,* 449 Pa. 515, 520-521 (1972), and Roberts, J., dissenting, at 524; *Manning* v. *Capelli,* 270 Pa. Super. 207, 212-214 (1979) (and remarks on Pennsylvania law in 7 Goodrich Amram 2d, Procedural Rules Service with Forms § 2201:31.1 [1977], with 1982 Supp.); *Duzan* v. *Myers,* 30 Ind. App. 227, 231 (1903). So also a reference to "heirs" as beneficiaries of the recovery could send a court to the statute on intestate succession to find the takers, but the actual distribution among them need not follow that text but could look to a distribution in percentages reflecting the respective losses as found by the trier. See *Estate of Riccomi,* 185 Cal. 458, 461-462 (1921). Again, the allocation made by the intestacy law could be held to apply only where the recovery fell to the decedent's estate, the indicated preferred takers having predeceased the decedent. See *Lombardo* v. *Pollock,* 21 Ariz. App. 537, 539 (1974). Cf. *Keithley* v. *Keithley,* 95 Wis. 2d 136, 138 (1980). In a

---

[10] This case was criticized thus in Annot., 14 A.L.R. 516, 522 (1921): "If the purpose of the statute that the damages shall be assessed in view of the pecuniary loss to the individuals is taken into consideration, it would seem that the reference to the statutes of distribution as the mode of determining the apportionment of the verdict should be construed as being merely for the purpose of ascertaining the classes of persons who may be entitled to participate, and the manner of distribution when not influenced by any consideration of pecuniary loss to particular beneficiaries, and not as intending absolutely to control with regard to the amount each of the distributees shall receive when considered in connection with the pecuniary loss suffered by them."

[11] As the citations here and above are merely illustrative, we do not exhaust later statutory or decisional histories.

given context, a statute regarding distribution of property of an intestate could be read as applying to a wrongful death recovery in a procedural not a substantive sense, the substance being governed by a compensatory principle. Cf. *Hurley* v. *Hurley*, 191 Okla. 194, 197 (1942).[12]

Without subscribing to all cases of accommodation on the books, we can say that on the whole they commend themselves to a disinterested mind as being sounder as a practical matter than the decisions inspired by an implacable literalism. The instant case, at any rate, lends itself readily to a reconciliation of the two statutory forces obedient to those canons of interpretation that are regularly invoked to resolve statutory inconsistencies. 2A Sands, Sutherland Statutory Construction § 51.02 (1973).

We repeat that we do not attempt to foresee or suggest solutions of cases that may have characteristics distinct from the present.

The subject may well attract legislative interest, as it is evident that the revision of 1973 was incomplete.[13] That path of reform has been taken in other States. See, e.g., *Lombardo* v. *Pollock*, 21 Ariz. App. at 540.

*Judgment affirmed.*

---

[12] Cases on the general subject may be found in Annot., Division among beneficiaries of amount awarded by jury or received in settlement upon account of wrongful death, 14 A.L.R. 516 (1921), 112 A.L.R. 30 (1938), 171 A.L.R. 204 (1947), and supplements.

[13] Counsel for the administratrix has plowed up some documents on the "legislative history" of the 1973 revision, but these did not assist us toward decision.