Albin LAAPERI, Administrator of the
Estate of Alan Laaperi,
Plaintiff, Appellee,

v.

SEARS, ROEBUCK & CO., INC., et al.,
Defendants, Appellants.

Albin LAAPERI, Administrator of the
Estate of James Laaperi,
Plaintiff, Appellee,

v.

SEARS, ROEBUCK & CO., INC., et al.,
Defendants, Appellants.

Albin LAAPERI, Administrator of the
Estate of Paul Laaperi,
Plaintiff, Appellee,

v.

SEARS, ROEBUCK & CO., INC., et al.,
Defendants, Appellants.

Janet LAAPERI, PPA, by Her Father,
Albin Laaperi, Plaintiff, Appellee,

v.

SEARS, ROEBUCK & CO., INC., et al.,
Defendants, Appellants.

Nos. 85–1284 to 85–1287.

United States Court of Appeals,
First Circuit.

Argued Nov. 15, 1985.

Decided March 31, 1986.

Barbara L. Moore with whom Earle Ç.
Cooley, William A. Curry and Cooley, Man-

ion, Moore & Jones, P.C., Boston, Mass., were on brief, for defendants, appellants.

Edward P. Reid, President, Automatic Fire Alarm Ass'n, on brief, for Automatic Fire Alarm Ass'n, amicus curiae.

Fredric A. Swartz, with whom Edward M. Swartz, Alan L. Cantor and Swartz & Swartz, Boston, Mass., were on brief for plaintiffs, appellees.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from jury verdicts totalling $1.8 million entered in a product liability suit against defendants Sears, Roebuck & Co. and Pittway Corporation. The actions were brought by Albin Laaperi as administrator of the estates of his three sons, all of whom were killed in a fire in their home in December 1976, and as father and next friend of his daughter, Janet, who was injured in the fire. Plaintiff's theory of recovery was that defendants had a duty to warn plaintiff that a smoke detector powered by house current, manufactured by Pittway and sold to Laaperi by Sears, might not operate in the event of an electrical fire caused by a short circuit. Defendants contend on appeal that the district court erred in denying their motions for directed verdict and judgment notwithstanding the verdict; that the admission into evidence of purportedly undisclosed expert testimony violated Fed.R.Civ.P. 26(e); and that the award of $750,000 for injuries to Janet Laaperi was excessive and improper. We affirm the judgments in favor of plaintiff in his capacity as administrator of the estates of his three sons, but vacate the judgment in favor of Janet Laaperi, and remand for a new trial limited to the issue of her damages.

I.

In March 1976, plaintiff Albin Laaperi purchased a smoke detector from Sears. The detector, manufactured by the Pittway Corporation, was designed to be powered by AC (electrical) current. Laaperi installed the detector himself in one of the two upstairs bedrooms in his home.

Early in the morning of December 27, 1976, a fire broke out in the Laaperi home. The three boys in one of the upstairs bedrooms were killed in the blaze. Laaperi's 13-year-old daughter Janet, who was sleeping in the other upstairs bedroom, received burns over 12 percent of her body and was hospitalized for three weeks.

The uncontroverted testimony at trial was that the smoke detector did not sound an alarm on the night of the fire. The cause of the fire was later found to be a short circuit in an electrical cord that was located in a cedar closet in the boys' bedroom. The Laaperi home had two separate electrical circuits in the upstairs bedrooms: one which provided electricity to the outlets and one which powered the lighting fixtures. The smoke detector had been connected to the outlet circuit, which was the circuit that shorted and cut off. Because the circuit was shorted, the AC-operated smoke detector received no power on the night of the fire. Therefore, although the detector itself was in no sense defective (indeed, after the fire the charred detector was tested and found to be operable), no alarm sounded.

Laaperi brought this diversity action against defendants Sears and Pittway, asserting negligent design, negligent manufacture, breach of warranty, and negligent failure to warn of inherent dangers. The parties agreed that the applicable law is that of Massachusetts. Before the claims went to the jury, verdicts were directed in favor of defendants on all theories of liability other than failure to warn.[1]

---

1. The district court denied defendants' motion for directed verdict as to two claims based upon the alleged failure to warn:

1. That the defendants were negligent in failing to warn of certain dangers inherent in the smoke detector in question; and

Laaperi's claim under the failure to warn theory was that he was unaware of the danger that the very short circuit which might ignite a fire in his home could, at the same time, incapacitate the smoke detector. He contended that had he been warned of this danger, he would have purchased a battery-powered smoke detector as a back-up or taken some other precaution, such as wiring the detector to a circuit of its own, in order better to protect his family in the event of an electrical fire.

The jury returned verdicts in favor of Laaperi in all four actions on the failure to warn claim. The jury assessed damages in the amount of $350,000 in each of the three actions brought on behalf of the deceased sons, and $750,000 in the action brought on behalf of Janet Laaperi. The defendants' motions for directed verdict and judgment notwithstanding the verdict were denied, and defendants appealed.

### II.

Defendants contend that the district court erred in denying their motions for directed verdict and judgment n.o.v. First, they claim that they had no duty to warn that the smoke detector might not work in the event of some electrical fires. Second, they maintain that even if they had such a duty, there was insufficient evidence on the record to show that the failure to warn proximately caused plaintiff's damages. We address these arguments in turn.

2. That the defendants breached implied warranties of merchantability with respect to its warnings and instructions.
The factual questions regarding duty to warn and causation underlying both the negligence and the warranty claims are essentially identical, and the jury returned verdicts in favor of Laaperi on both failure to warn claims. Although the standards of proof on the two claims differ slightly, under Massachusetts law "[a] defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Hayes v. Ariens Co.*, 391 Mass. 407, 462 N.E.2d 273, 275 (1984). Therefore, our analysis in Part II of this opinion, which focuses on the negligence claim, is dispositive of the breach of warranty claim as well.

### A. *Duty to Warn*

We must look, of course, to Massachusetts law. While we have found no cases with similar facts in Massachusetts (or elsewhere), we conclude that on this record a jury would be entitled to find that defendants had a duty to warn. In Massachusetts, a manufacturer[2] can be found liable to a user of the product if the user is injured due to the failure of the manufacturer to exercise reasonable care in warning potential users of hazards associated with use of the product. *See, e.g., Mitchell v. Sky Climber, Inc.*, 396 Mass. 629, 487 N.E.2d 1374, 1376 (1986); *Killeen v. Harmon Grain Products*, 11 Mass.App. 20, 413 N.E.2d 767, 770 (1980); W. Prosser & W.P. Keeton, *The Law of Torts* § 96, at 685 (5th ed. 1984). The manufacturer can be held liable even if the product does exactly what it is supposed to do, if it does not warn of the potential dangers inherent in the way a product is designed. It is not necessary that the product be negligently designed or manufactured; the failure to warn of hazards associated with foreseeable uses of a product is itself negligence, and if that negligence proximately results in a plaintiff's injuries, the plaintiff may recover. *Schaeffer v. General Motors Corp.*, 372 Mass. 171, 174, 360 N.E.2d 1062, 1065 (1977). *See also Mitchell*, 487 N.E.2d at 1376; *cf. Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 465 (5th Cir.1976) (in a strict liability case, the failure to warn of the hazards associated with a product is itself a product "defect").

2. Defendants make no argument that the duty of Sears is any different from that of Pittway, the actual manufacturer. In the present case, Sears advertised the smoke detector as a "Sears Early One Fire Alarm." Pittway Corp. was not mentioned anywhere in these advertisements nor in the 12-page owner's manual packaged with the detector. Where a seller puts out a product manufactured by another as its own, the seller is subject to the same liability as though it were the manufacturer. *Restatement (Second) of Torts* § 400 (1965), *cited with approval in Jennett v. Colorado Fuel & Iron Corp.*, 9 Mass.App. 823, 398 N.E.2d 755, 757 (1980); *Tibbetts v. Ford Motor Co.*, 4 Mass.App. 738, 358 N.E.2d 460, 461 (1976).

The sole purpose of a smoke detector is to alert occupants of a building to the presence of fire. The failure to warn of inherent non-obvious limitations of a smoke detector, or of non-obvious circumstances in which a detector will not function, can, we believe, "create an unreasonable risk of harm in that the inhabitants of a structure may be lulled into an unjustified sense of safety and fail to be forewarned of the existence of a fire." *Butler v. Pittway Corp.*, 770 F.2d 7, 11 (2d Cir.1985). In the present case, the defendants failed to warn purchasers that a short circuit which causes an electrical fire may also render the smoke detector useless in the very situation in which it is expected to provide protection: in the early stages of a fire. We believe that whether such a failure to warn was negligent was a question for the jury.

[5] To be sure, it was the fire, not the smoke detector per se, that actually killed and injured plaintiff's children. But as the Second Circuit recently held, the manufacturer of a smoke detector may be liable when, due to its negligence, the device fails to work:

> Although a defect must be a substantial factor in causing a plaintiff's injuries, it is clear that a "manufacturer's liability for injuries proximately caused by these defects should not be limited to [situations] in which the defect causes the accident, but should extend to situations in which the defect caused injuries over and above that which would have occurred from the accident, but for the defective design."

*Butler v. Pittway Corp.*, 770 F.2d at 9 (citations omitted) (smoke detector manufacturer can be held liable for personal injuries suffered in fire where defective detector failed to sound in timely fashion). *See also Trust Corp. of Montana v. Piper Aircraft Corp.*, 506 F.Supp. 1093, 1094–95 (D.Mont.1981) (airplane manufacturer can be held liable for lack of shoulder harnesses where harnesses might have prevented some of injuries suffered in crash); *Stahl v. Ford Motor Co.*, 64 Ill.App.3d 919, 21 Ill.Dec. 667, 670–71, 381 N.E.2d 1211, 1214–15 (1978) (auto manufacturer held liable for increased damages resulting from failure of seat belt during accident). The "crashworthiness" or "enhanced injury" automobile cases are to the same effect. *See Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968).

It is true that, unlike the above, there was no defect of design or manufacture in this case. But there was evidence from which it could be inferred that the absence of a warning enhanced the harm resulting from the fire. Plaintiff testified that if he had realized that a short circuit that caused an electrical fire might at the same time disable the smoke detector, he would have purchased a back-up battery-powered detector or wired the detector in question into an isolated circuit, thus minimizing the danger that a fire-causing short circuit would render the detector inoperative. We find, therefore, a sufficient connection between the children's deaths and injury and the absence of any warning.

Defendants contend that the district court nevertheless erred in denying their motions because, they claim, the danger that an electrical fire will incapacitate an electric-powered smoke detector is obvious. They point out that anyone purchasing a device powered by house electrical current will necessarily realize that if the current goes off for any reason, the device will not work.

In Massachusetts, as elsewhere, a failure to warn amounts to negligence only where the supplier of the good known to be dangerous for its intended use "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Restatement (Second) of Torts* § 388 (1965). *See Fiorentino v. A.E. Staley Manufacturing Co.*, 11 Mass. App. 428, 416 N.E.2d 998, 1004 (1981); *Maldonado v. Thomson National Press Co.*, 16 Mass.App. 911, 449 N.E.2d 1229, 1231, *review denied*, 389 Mass. 1105, 452 N.E.2d 1158 (1983). Where the risks of the product are discernible by casual inspection, such as the danger that a knife can cut, or a stove

burn, the consumer is in just as good a position as the manufacturer to gauge the dangers associated with the product, and nothing is gained by shifting to the manufacturer the duty to warn. Thus, a manufacturer is not required to warn that placing one's hand into the blades of a potato chopper will cause injury, *Plante v. Hobart Corp.*, 771 F.2d 617 (1st Cir.1985), that permitting a three-year-old child to ride on the running board of a moving tractor risks injury to the child, *Kerr v. Koemm*, 557 F.Supp. 283 (S.D.N.Y.1983), or that firing a BB gun at another at close range can injure or kill, *Sherk v. Daisy-Heddon*, 498 Pa. 594, 450 A.2d 615 (1982). If a manufacturer had to warn consumers against every such obvious danger inherent in a product, "[t]he list of obvious practices warned against would be so long, it would fill a volume." *Plante*, 771 F.2d at 620.

Defendants ask us to declare that the risk that an electrical fire could incapacitate an AC-powered smoke detector is so obvious that the average consumer [3] would not benefit from a warning. This is not a trivial argument; in earlier—some might say sounder—days, we might have accepted it. *Compare Jamieson v. Woodward & Lothrop*, 247 F.2d 23 (D.C.Cir. 1957). Our sense of the current state of the tort law in Massachusetts and most other jurisdictions, however, leads us to conclude that, today, the matter before us poses a jury question; that "obviousness" in a situation such as this would be treated by the Massachusetts courts as presenting a question of fact, not of law. To be sure, it would be obvious to anyone that an electrical outage would cause this smoke detector to fail. But the average purchaser might not comprehend the specific danger that a fire-causing electrical problem can simultaneously knock out the circuit into which a smoke detector is wired, causing the detector to fail at the very moment it is needed. Thus, while the failure of a detector to function as the result of an electrical malfunction due, say, to a broken power line or a neighborhood power outage would, we think, be obvious as a matter of law, the failure that occurred here, being associated with the very risk—fire—for which the device was purchased, was not, or so a jury could find.

Our conclusion finds support in a number of Massachusetts cases stating that a court should be extremely reluctant to take from the jury issues regarding the adequacy of warnings. The recent decision of the Massachusetts Supreme Judicial Court in *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65, *cert. denied*, ── U.S. ──, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985) is instructive:

> The common law duty to warn ... necessitates a warning "comprehensible to the average user and ... convey[ing] a fair indication of the nature and extent of the danger to the mind of a reasonably prudent person." Whether a particular

---

**3.** Defendants appear to claim that the obviousness standard should necessarily take into account the knowledge and experience of the individual consumer who is injured. The Massachusetts courts have made clear, however, that warnings are to be construed with the "average user" or "reasonably prudent person" in mind. *MacDonald v. Ortho Pharmaceutical Corp.*, 394 Mass. 131, 475 N.E.2d 65, 71, *cert. denied*, ── U.S. ──, 106 S.Ct. 250, 88 L.Ed.2d 258 (1985). *See also Restatement (Second) of Torts* § 388 comment a (1965). It is true that where a manufacturer reasonably expects only those with a certain degree of knowledge and expertise to come into contact with a product, the obviousness standard should be considered in light of the reasonable person with that knowledge or expertise. *See, e.g., McIntyre v. Everest & Jennings*, 575 F.2d 155 (8th Cir.), *cert. denied*,

439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978) (risk of tipping in specially designed commode chair obvious to paraplegic); *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457 (5th Cir.1976) (dangers of chemical obvious to professional users to whom it is exclusively marketed); *Restatement (Second) of Torts* § 388 comment k (supplier must warn of product's dangers if there is "no reason to believe that those who will use it will have such special experience as will enable them to perceive the danger"). This rule is not relevant to the present case, however, for the smoke detector was marketed through Sears flyers and catalogs to individuals who could not be expected to have any particular expertise in electrical matters. The fact that Laaperi in fact had some such expertise was therefore purely fortuitous, and does not bear on the legal standard for obviousness.

warning measures up to this standard is almost always an issue to be resolved by a jury; few questions are "more appropriately left to a common sense lay judgment than that of whether a written warning gets its message across to an average person." A court may, as a matter of law, determine "whether the defendant has conformed to that standard, in any case in which the jury may not reasonably come to a different conclusion," but judicial intrusion into jury decision-making in negligence cases is exceedingly rare.

*Id.*, 475 N.E.2d at 71 (citations omitted). Applying this standard, we think that the issue of obviousness to the average consumer of the danger of a fire-related power outage was one for the jury, not the court, to determine. In the present case, the jury was specifically instructed that if it found this danger to be obvious it should hold for defendants. It failed to do so.

### B. *Causation*

While, as just discussed, the danger the detector would fail in these circumstances was not so obvious as to eliminate, as a matter of law, any need to warn, we must also consider whether Laaperi's specialized electrical knowledge constituted a bar to his own recovery. As pointed out in note 3, *supra*, plaintiff's specialized knowledge is immaterial to whether defendants had a duty to warn, since that duty is defined by the knowledge of the average purchaser. But plaintiff's expertise *is* relevant to whether defendants' failure to warn caused plaintiff's damages. Even though defendants may have been required to provide a warning, plaintiff may not recover if it can be shown that because of his above-average knowledge, he already appreciated the very danger the warning would have described. In such event there would be no connection between the negligent failure to warn and plaintiff's damages.

Defendants here presented considerable evidence suggesting that Laaperi, who was something of an electrical handyman, knew of the danger and still took no precautions. Laaperi, however, offered evidence that he did *not* know of the danger, and that he would have guarded against it had he been warned. The following exchange, between Laaperi and his counsel on direct examination, tends to support the jury's determination of liability:

MR. SWARTZ: Sir, did you ever consider when purchasing this smoke detector that an electric outage would render it inoperable?

THE WITNESS [LAAPERI]: I did not.

Q: Did you ever consider or contemplate at any time installing a separate circuit for the smoke detector in and of itself?

A: I did not.

Q: Did you ever read the owner's manual?

A. Yes, I did.

Q: If the owner's manual had indicated to you to place this on a separate circuit, would you have done it?

A: Yes, I would have.

Q: Were you ever advised by any literature or any written instructions to purchase a back-up battery system?

A: No.

Q: If you were alerted to that, would have have done it?

A: I think I would have, yes.

Self-serving as this testimony was, the jury was free to credit it. In reviewing the denial of a motion for directed verdict or judgment n.o.v., we are obliged to view the evidence in the light most favorable to the verdict winner. *Insurance Company of North America v. Musa*, 785 F.2d 370, 372 (1st Cir.1986); *Borras v. Sea-Land Service, Inc.*, 586 F.2d 881, 885 (1st Cir. 1978). We are not at liberty to evaluate the credibility of witnesses or the weight of the evidence at trial. *Musa*, 785 F.2d at 372; *Hubbard v. Faros Fisheries, Inc.*, 626 F.2d 196, 199 (1st Cir.1980). In light of this standard, we cannot say that the district court erred in denying defendants' motions for directed verdict and judgment n.o.v., for the jury could have believed Laaperi's testimony in the colloquy quoted above, among other evidence, and concluded that had he been properly warned, Laap-

eri would have instituted different fire detection methods in his home to protect his family against the danger that his smoke detector would be rendered useless in the event of a fire-related power outage.

### III.

Defendants next contend that the district court erred in admitting an "undisclosed" opinion of one of plaintiff's experts.

Prior to trial, defendants propounded expert interrogatories pursuant to Fed.R.Civ.P. 26(b)(4) seeking disclosure of the facts and opinions to which each of plaintiff's experts was expected to testify and a summary of the grounds for each opinion. In response, plaintiff disclosed that his expert, Leonard Mandell, would testify that defendants' negligence and breach of warranty caused the deaths and injuries of plaintiff's children. In pertinent part, plaintiff stated that Mandell would testify as follows:

> Because the detector was a device on which consumers relied for protection of their safety, the detector should have been equipped with all possible safety devices.... The defendants marketed inadequate warnings and instructions with their smoke detector. Said warnings and instructions were inadequate to warn consumers, including the Laaperi family, that they could be completely without protection in the event of electrical failure. Further, the warnings and instructions were inadequate with respect to placement of the product and as to the need for additional protection.

At trial, Mandell testified that it was negligent for the defendants to have failed to advise purchasers to buy a battery back-up unit together with the AC unit. He added, however, that

It was also negligent for the manufacturer and the retailer not to have instructed in its installation manual and on the detector itself that when you wire this unit, you must put it on its separate electrical branch fuse circuit. Don't put it on the extension circuits. Don't put it on the lighting circuit because, again, they knew that extension cord fires were rather common in the United States.... [I]f it was on a separate circuit in this particular situation, we may not be here today.

Defendants claimed that plaintiff's response to expert interrogatories contained no indication that Mandell would testify about this "separate circuit" theory. Relying on the supplementation of response requirement of Fed.R.Civ.P. 26(e), they moved to strike Mandell's testimony regarding the theory.[4] The district court denied the motion, specifically finding that Mandell's testimony was within the scope of the expert interrogatories.

We are unable to say that the district court abused its discretion in making this determination. The Rule 26 supplementation requirement should not be read mechanically, "but rather in light of its dual purposes, 'narrowing of issues and elimination of surprise.'" *Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 7 (1st Cir.1985). In the present case, neither of these purposes was violated. First, the district court could reasonably have found that the answers given by plaintiffs satisfactorily apprised defendants of the issues to which Mandell testified. Second, a Pittway official conceded at trial that the separate circuit theory was discussed by a group of Pittway executives some two weeks prior to trial. Thus, the district court could reasonably have concluded that defendants were not surprised by a new theory when Mandell brought the issue up at trial.

---

**4.** Fed.R.Civ.P. 26(e) provides in pertinent part:
  **(e) Supplementation of Responses.** A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) a party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony.

■ We add that it would be the exceptional case where we overturn a jury verdict on this ground alone. Rule 26 is designed to focus the issues in a case during the discovery phase, thus facilitating effective cross-examination at trial. Where there is a claimed violation of the rule, the party objecting to the evidence must "confront the evidence with a minimum of disruption to the trial." *Johnson*, 775 F.2d at 8. In the present case, defendants sought only to strike Mandell's testimony; they did not request a continuance during which they could have deposed Mandell or otherwise prepared their cross-examination. As we observed in *Johnson*, "[c]ourts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so they may attempt to counter the opponent's testimony." *Id.*[5]

We find no error in the court's refusal to strike the testimony in question.

### IV.

Finally, defendants contend that the award of $750,000 in damages to Janet Laaperi was excessive, and should have been overturned by the district court.

■ A district court must accord the jury wide latitude in setting damages, and should set aside a verdict only where it is " 'grossly excessive', 'inordinate', 'shocking to the conscience of the court' or 'so high that it would be a denial of justice to permit it to stand.' " *McDonald v. Federal Laboratories*, 724 F.2d 243, 246 (1st Cir. 1984). The jury is free to select the highest figures for which there is adequate evidentiary support; thus, a "verdict will be reduced or set aside only if it is shown to exceed 'any rational appraisal or estimate of the damages that could be based upon the evidence before the jury.' " *Segal v. Gilbert Color Systems*, 746 F.2d 78, 81 (1st Cir.1984).

■ This is not to say, however, that this court will always defer to the determination of the jury where the district court has refused to set aside a verdict. To be

sure, "[w]e must give the benefit of every doubt to the judgment of the trial judge; but surely there must be an upper limit, and whether that has been surpassed is not a question of fact to which reasonable [persons] may differ, but a question of law." *Dagnello v. Long Island Railroad Co.*, 289 F.2d 797, 806 (2d Cir.1961). We believe that in the present case, the upper limit was exceeded.

Janet Laaperi testified that on the night of the fire, she woke up and smelled smoke. She woke her friend who was sleeping in her room, and they climbed out to the icy roof of the house. Her father grabbed her from the roof and took her down a ladder. She was taken to the hospital. Although she was in "mild distress," she was found to be "alert, awake, [and] cooperative." Her chest was clear. She was diagnosed as having first and second degree burns of her right calf, both buttocks and heels, and her left lower back, or approximately 12 percent of her total body area. She also suffered from a burn of her tracheobronchial mucosa (*i.e.*, the lining of her airway) due to smoke inhalation, and multiple superficial lacerations on her right hand.

Janet remained in the hospital for three weeks. During that period, her burns were wrapped and washed a few times per day. No skin grafts were required. She was treated for lung congestion, and exploratory surgery was performed on her finger. After discharge, she wore a bandage for about a month, and had to apply a salve to her burns daily. She returned to the hospital two or three more times for checkups, but no complications were discovered.

At the time of trial, Janet was a healthy, full-time college student. Aside from a non-disabling permanent scar on her lower back, there was no evidence of any medical problems whatsoever within a month and a half or two months after the fire. Indeed, in high school she was quite active in athletics.

---

**5.** Defendants did request a five-minute recess, which was granted.

The jury was free, of course, to award Janet a large amount for her pain and suffering at the time of the accident, and for the permanent scar she received in the fire.[6] It was also entitled to compensate her for her medical expenses, and for the mental elements of damage accompanying her injury, such as fright, apprehension as to the effects of the injury, nervousness, and humiliation. But the jury was *not* permitted to award her compensation for her grief and mental suffering resulting from the loss of her three brothers. This has long been the rule in Massachusetts:

> The mental suffering, for which damages can be recovered, therefore, is limited to that which result to the person injured, as the necessary or natural consequence of the physical injury. But sentiments of grief, sorrow and mourning, which are aroused by extraneous causes, thoughts or reflections, are excluded.

*Sullivan v. Old Colony Street Ry. Co.*, 197 Mass. 512, 516, 83 N.E. 1091, 1092 (1908). *Accord Bullard v. Central Vermont Ry.*, 565 F.2d 193, 197 (1st Cir.1977); *Lewis v. City of Springfield*, 261 Mass. 183, 187–88, 158 N.E. 656 (1927). *See also Guy v. Johnson*, 15 Mass.App. 757, 760–61, 448 N.E.2d 1142, 1144–45, *review denied*, 389 Mass. 1105, 452 N.E.2d 1158 (1983) (under Massachusetts wrongful death statute, Mass. Gen.Laws ch. 229, § 2 (1984), where deceased dies without leaving surviving spouse or parent, damages presumptively awarded to deceased's parents).

After carefully reviewing the record, we are compelled to conclude that the jury verdict of $750,000 was so clearly in excess of any rational appraisal of her actual damages that it may not stand.

The jury undoubtedly, and understandably, felt a great deal of sympathy for a young girl who, at the age of 13, lost three brothers in a tragic fire. But by law the jury was only permitted to compensate her for those damages associated with her own injuries. Her injuries included fright and pain at the time of and after the fire, a three-week hospital stay, some minor discomfort for several weeks after discharge, and a permanent scar on her lower back.

Plaintiff has pointed to no cases, and we have discovered none, in which such a large verdict was sustained for such relatively minor injuries, involving no continuing disability. *Contrast McDonald v. Federal Laboratories*, 724 F.2d at 246–47 ($929,000 verdict upheld where plaintiff continued to suffer from constant itching, open sores, infections, and blistering on his abdomen, inner thighs, scrotal area, arms and ankles after exposure to mace); *Griffin v. General Motors Corp.*, 380 Mass. 362, 371, 403 N.E.2d 402, 408 (1980) ($1,000,000 verdict upheld where plaintiff suffered permanent loss of bodily functions, massive scarring and disfigurement, and continued pain and suffering); *Pemberton v. Boas*, 13 Mass. App. 1015, 1018–19, 433 N.E.2d 490, 494 (1982) ($730,000 verdict, reduced by remittitur from $1,128,000, upheld where plaintiff suffered lacerations of liver and stomach, near total transection of pancreas, and ruptured disc). Considering Janet's injuries alone, apart from the horrible nature of her brothers' deaths, we find the award of $750,000 was so grossly disproportionate

---

**6.** The district court based its approval of the jury verdict at least in part on the unreasonable assumption that the award would not earn any interest over the course of Janet Laaperi's life. In ruling on motions by defendants after the verdict was returned, the court stated:

> She is a young lady, and she is going to go around with a scarred back for the rest of her life. She is only 20 years old. If she lives another 50 years, what they allowed her is essentially—you can rationalize it—$10,000 a year for that, which would add up to $500,-000.

In fact, a present sum of $500,000 would provide an annuity of far more than the $10,000 per year the district court thought could be rationalized given the nature of Janet Laaperi's injuries. Assuming an interest rate of seven percent, a present sum of only $138,000 would be sufficient to yield an annuity of $10,000 a year for 50 years. Assuming a ten percent interest rate, a present award of $99,147 would provide the $10,000 per year for 50 years.

to the injuries of Janet Laaperi as to be unconscionable. It is therefore vacated.

The judgments in favor of Albin Laaperi in his capacity as administrator of the estates of his three sons are affirmed. In the action on behalf of Janet Laaperi, the verdict of the jury is set aside, the judgment of the district court vacated, and the cause remanded to that court for a new trial limited to the issue of damages.

*So ordered.*