JAMES A. HARDING *vs.* EVELYN DEANGELIS, administratrix.

No. 94-P-192.

Norfolk. December 12, 1994. - November 29, 1995.

Present: ARMSTRONG, SMITH, & GREENBERG, JJ.

*Wrongful Death. Actionable Tort. Devise and Legacy,* Child born out of wedlock. *Words,* "Next of kin."

Discussion of the wrongful death statute with respect to actions brought and prosecuted by an administrator for a stillborn fetus and with respect to those entitled to distribution of any recovery thereunder. [456-458]

Where the father of a child born out of wedlock is not the heir of that child unless the child could have inherited from the father, G. L. c. 190 § 6, the father of a child conceived out of wedlock and stillborn may not be the heir of that child as, not having lived, the fetus cannot be an heir and cannot have an estate: accordingly, the father of such a child was not entitled to share in the proceeds of a wrongful death action brought by an administrator for the fetus. [458-459]

PETITION filed in the Norfolk Division of the Probate and Family Court Department on July 12, 1984.

A motion to dismiss a petition for distribution was heard by *Eileen M. Shaevel,* J.

*Douglas H. Krabbenhoft* for the plaintiff.

ARMSTRONG, J. The petitioner is the father of an illegitimate child who was stillborn as the result of an automobile accident. Seeking to share equally with the mother in the proceeds of a wrongful death claim prosecuted by the child's administratrix, the petitioner asks that the administratrix, the child's maternal grandmother, be ordered to make distribution of half of the net proceeds to him. He appeals from a decree of a Probate Court dismissing his petition for distribution.

The mother and father of the stillborn child were high school students, seventeen and eighteen years of age, respec-

tively, at the time of the accident. The mother was in the third trimester of her pregnancy, and the child was viable prior to the accident. Medical testing the evening of the accident determined that there was no fetal heartbeat. Labor was induced, and the child was delivered stillborn that night. The next day the hospital filed a report of fetal death, as required by G. L. c. 111, § 202. For reasons which do not appear, a certificate of live birth was also executed and filed.[1] The birth certificate listed the plaintiff as father and was signed by him, the mother, and the attending physician.

The decision in *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. 354, 355 (1975), overturning *Leccase* v. *McDonough*, 361 Mass. 64 (1972), authorized a wrongful death action to be maintained for a fetal death. That holding necessitated some adaptation to the wrongful death statute, because a wrongful death action may not be maintained by the persons entitled to the recovery, but only by the executor or administrator of the decedent. G. L. c. 229, § 2. *Gaudette* v. *Webb*, 362 Mass. 60, 64, 71 (1972). A fetus would not normally have an administrator, having no estate; a recovery for wrongful death, as distinguished from a recovery for conscious pain and suffering of the deceased, is not part of the estate of the decedent. *Sullivan* v. *Sullivan*, 323 Mass. 671, 672 (1949) (a wrongful death recovery is not part of the general assets of the estate, is not to be applied to the payment of debts, and is not to be distributed under the will). *Maltzman* v. *Hertz*, 336 Mass. 704, 707-708 (1957). Rather, the wrongful death recovery is a separate fund, held in trust by the administrator or executor, for the benefit of those entitled to the recovery under the wrongful death statute. *Arnold* v. *Jacobs*, 316 Mass. 81, 85 (1944). *Maltzman* v. *Hertz, supra. Mone* v. *Greyhound Bus Co., supra*, is accommodated in practice by appointing an administrator for the stillborn fetus, for the purpose of prosecuting the action and distributing the net

---

[1]Under G. L. c. 46, § 9, if a fetus is born live and dies immediately thereafter, both a birth and a death certificate are to be recorded. General Laws c. 111, § 202, provides that "the provisions of chapter forty-six regarding the reporting of deaths shall not apply to fetal deaths."

proceeds. Indeed, the *Mone* action itself was prosecuted by such an administrator.

The wrongful death statute defines the class of presumptive takers, G. L. c. 229, § 1, and measures the recovery by "the fair monetary value of the decedent to the persons entitled to receive the damages recovered." G. L. c. 229, § 2. *Guy* v. *Johnson*, 15 Mass. App. Ct. 757, 762 (1983). The primary takers under the act are the decedent's spouse and issue; but a fetus, of course, can have no spouse or issue, with the result that those entitled to the recovery here, under § 1(4), are the fetus's "next of kin." There is some authority for the proposition that "next of kin," in the absence of anything to import that the phrase is used in a different sense, connotes the decedent's nearest blood relatives, that is, those closest in degree of consanguinity, as contrasted with the word "heirs," which suggests reference to the statutory scheme of intestate distribution. *Swasey* v. *Jaques*, 144 Mass. 135, 137-138 (1887). *Agricultural Natl. Bank* v. *Schwartz*, 325 Mass. 443, 446 (1950). By that definition the mother and the father would each be entitled to recovery — presumptively, at least, because the amount recovered would not necessarily be divided equally but rather, under *Guy* v. *Johnson, supra,* in proportion to the value of the decedent to each respectively.

It is emphasized in *Swasey* v. *Jaques, supra* at 138, that "[t]he context and the subject matter must in each case determine the meaning of the words [next of kin]." Thus, a Federal court, applying the Massachusetts wrongful death statute, has read *Guy* v. *Johnson* as holding that the words "next of kin" incorporate the statutory intestacy scheme of distribution. *Poyser* v. *United States*, 602 F. Supp. 436, 440 (D. Mass. 1984). This holding seems reasonable to us, in context, because the wrongful death statute is, in effect, setting out a parallel scheme of intestate distribution, made to insure that the proceeds of the recovery be distributed in a manner commensurate with the actual loss to those presumptively closest to the decedent, but without the detail that appears in the more comprehensively thought out intestacy

statute. Mechanical reliance on consanguinity, in particular, would sidestep the policy of the Commonwealth dealing with intestate distribution in the context of illegitimacy, which is set out in G. L. c. 190, §§ 5-7, as adopted in 1980 (St. 1980, c. 396[2]).

Under that scheme, the policy of the Commonwealth is that the father of an illegitimate child is not necessarily entitled to be treated as the child's heir. In contrast to both parents of a child born within the marriage relationship, G. L. c. 190, § 3(2), and in contrast to the mother of a child born out of wedlock, G. L. c. 190, § 5, who are all unconditionally deemed heirs to the child, and thus, inferentially, the child's next of kin, the unwed father's entitlement to that status is conditional. He is only deemed heir to the child if the child could have inherited from him. G. L. c. 190, § 6.

Because the stillborn child here did not live to birth, she never achieved legal personhood. Not having lived, she cannot be the heir of anybody and cannot have an estate. A fetus that is never born live cannot be an heir and cannot have an estate. The *Mone* decision held only that a fetus is a person for purposes of maintaining an action under the wrongful death statute. *Mone* v. *Greyhound Lines, Inc.*, 368 Mass. at 355. Absurd consequences would follow if a fetus were treated as a son or daughter, or as a brother or sister, under the intestacy law. A fetus may be an heir conditionally (see G. L. c. 190, § 8, relating to children born posthumously), but the condition is one of live birth. Because a stillborn fetus cannot inherit from its father, the father of such a fetus cannot meet the condition of § 6. Contrast *Sullivan* v. *Farrell*, 383 Mass. 119, 121 (1981) (liveborn illegitimate child is heir of deceased father, when father acknowledged the child during his life).[3] It follows that the petitioner

[2]These statutes were further amended by St. 1986, c. 334, §§ 5-7, to change the words "illegitimate child" to "child born out of wedlock." We assume this change was not intended to have substantive consequences.

[3]There is, in our view, no constitutional barrier to this interpretation of § 6. The distinction between the illegitimate child's right to inherit from its mother and its father, respectively, held violative of the Commonwealth's equal rights amendment in *Lowell* v. *Kowalski*, 380 Mass. 663,

is not entitled to share in the proceeds of the wrongful death action.[4]

Putting our decision on this ground, we do not reach the correctness of the judge's further conclusion that the petitioner failed in any event to assert his claim to be heir to the child within the time limit prescribed by G. L. c. 190, § 7 (one year from death[5]). There is, however, a practical reason, in the wrongful death context, for adjudicating the father's status as next of kin prior to the trial of the wrongful death action, because, under § 1 of the wrongful death statute, damages are to be measured in part by the value of the deceased child to the father. See G. L. c. 229, § 2; *Sullivan* v. *Farrell*, 383 Mass. at 120 n.4; *Guy* v. *Johnson*, 15 Mass. App. Ct. at 758-759. Here the petitioner's claim was asserted six years after the accident, after the recovery had been won in the wrongful death action. Presumably the jury in that

---

669-670 (1980), is not present here, because a stillborn child cannot inherit from either its mother or its father in any circumstances. See also Warner, Massachusetts Probate Manual c. 3, at 13-14 (4th ed. 1988). Nor would equal protection concerns for equalizing treatment of illegitimate children, see *Powers* v. *Wilkinson*, 399 Mass. 650, 654-656 (1987), require that unmarried fathers be treated identically to married fathers.

[4]The father's petition alleges that he lived with the mother in the administratrix's house prior to the accident and until three months thereafter, that the mother was his fiancée, that they planned to be married after the birth, and that he cared for the mother in the aftermath of the accident. The mother, by affidavit, in effect denies those allegations, claiming that the plaintiff lived with his own mother at the time of the accident and that he offered little or no support in the weeks after the accident. These disputed facts are not, on our view of the case, material to the outcome.

[5]Section 7 requires that an illegitimate child assert his or her claim to be heir to a deceased father within the time given to creditors of the estate to assert their claims. "A person may establish paternity if, within the period provided under section nine of chapter one hundred and ninety-seven for bringing actions against executors and administrators, such person. . . ." While § 7 was obviously drafted in contemplation of a claim by the child to be heir of the father, the judge applied the time limit set by § 7 to the converse situation, a claim by the father to be heir of the illegitimate child.

action were not asked to determine the value of the stillborn child to the petitioner.

*Decree dismissing petition for*
*distribution affirmed.*