Borenstein, J.
Plaintiffs, Richard and Shirley Fahey,[3] commenced this litigation in November of 1992 to recover from defendants, Philip Morris, Inc. (“Philip Morris”), R.J. Reynolds Tobacco Co. (“Reynolds”), The Tobacco Institute, Inc. (‘TI”), and The Council for Tobacco Research — USA, Inc. (“CTR”), for injuries suffered as a result of plaintiff Richard Fahey’s forty years of cigarette smoking. Plaintiffs’ suit contains multiple claims for damages including breach of express warranty, negligent misrepresentation, fraud, conspiracy to commit fraud, failure to warn, defective design, and loss of consortium.
Defendants now move for summary judgment pursuant to Mass.R.Civ.P. 56. Plaintiffs oppose defendants’ motion arguing that genuine issues of material fact exist and that material evidence within the defendants’ exclusive possession and control has been unavailable to plaintiffs. For the reasons set forth below, defendants’ motion for summary judgment is DENIED.
BACKGROUND
The summary judgment record, when considered in the light most favorable to the plaintiffs, the non-moving party, indicates the following.[4] Plaintiff Richard Fahey (“Mr. Fahey”) was born on November 7, 1934. Plaintiff Shirley Fahey (“Mrs. Fahey”) was born on December 19, 1935. Plaintiffs met in approximately 1948 and married on September 8, 1957.
Mr. Fahey began smoking as a teenager. From the early 1950s until his death in 1992 Mr. Fahey bought and consumed “Winston” cigarettes, which are manufactured and marketed by defendant Reynolds, and “Marlboro” cigarettes, which are manufactured and marketed by defendant Philip Morris.[5] By the late 1950s, Mr. Fahey was smoking one to one and a half packs of cigarettes per day. He smoked his first cigarette as soon as he got up in the morning and would smoke after each meal. Frequently, he would smoke in the middle of the night if he was awakened for some reason.
When he first began smoking, Mr. Fahey would sometimes smoke unfiltered cigarettes. After 1960, however, he smoked primarily filtered cigarettes. Some time later, Mr. Fahey began smoking “light cigarettes,” primarily Winston Lights. For a brief time, Mr. Fahey smoked a pipe. He preferred cigarettes, however, and discontinued smoking the pipe.
*22 Mr. Fahey tried to quit smoking many times during the almost four decades he smoked. On several occasions, he tried quitting “cold turkey.” He also sought the help of a hypnotist. During one attempt he used a nicotine patch. Although he was able to quit briefly on several occasions, he always began smoking again, the last time just before his death.
In early 1992 Mr. Fahey was diagnosed with metastatic carcinoma of the hypoglottis with metastases to the lung and lymph nodes. Several of Mr. Fahey’s doctors told plaintiffs that cigarette smoking was the likely cause of his cancer. On December 18, 1992, Mr Fahey died of cancer.
In 1954, various cigarette manufacturers, as well as a number of organizations representing tobacco growers, formed the Tobacco Industry Research Committee, now known as the Council for Tobacco Research-U.S.A. (“CTR”). CTR was created by the tobacco industry to finance research on matters relating to tobacco and health. Over the years, officers and directors of defendants Reynolds and Philip Morris have sat on the board of directors of CTR.
In 1958, members of the tobacco industry, including defendants Reynolds and Philip Morris, organized The Tobacco Institute (“TI”). TI was established to disseminate to the public favorable scientific and medical information about smoking.[6] Over the years, officers and directors of defendants Reynolds and Philip Morris have been members of the executive committee of TI.
Since the 1950s, the defendants have been publicly questioning, through lobbying, advertising, and industry-funded research, the link between smoking and human disease.[7] Mr. Fahey, an avid reader, read the Boston Globe, as well as other national publications. It was in these types of publications that the defendants disputed the charges that cigarette smoking was hazardous to human health.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56 (c). The moving party has the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
If the party moving for summary judgment does not have the burden of proof at trial, as is the case here, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). If, using Mass.R.Civ.P. 56(c) materials, the moving party establishes the absence of a triable issue, the party opposing the motion must allege specific facts which establish the existence of a genuine issue of material fact in order to defeat the motion. Pederson, supra, 404 Mass. at 17. “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion of summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
COUNTS I AND II: BREACH OF WARRANTY
In Counts I and II of their complaint plaintiffs allege that defendants Reynolds and Philip Morris expressly warranted that the consumption of their cigarettes would not be hazardous to human health. According to the plaintiffs, representations made by the defendants became “part of the basis of the bargain” in which Mr. Fahey decided to smoke cigarettes produced by defendants Reynolds and Philip Morris.
Under Massachusetts law, “any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.” G.L.c. 106, §2-313(l)(a) (West 1990). Additionally, “(a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.” G.L.c. 106, §2-313(l)(b) (West 1990).
To create an express warranty it is not necessary that the seller use formal words such as “warrant” or “guarantee” or that the seller have a specific intention to make a warranty. There must be, however, something more than an affirmation of the value of the goods, a statement of the seller’s opinion, or a commendation of the goods. G.L.c. 106, §2-313(2) (West 1990).
The phrase “part of the basis of the bargain” is not defined in the statute, nor has it been interpreted by Massachusetts’ courts.[8] Thus, for guidance in interpretation, this Court must look to the language of the statute, the comments to the state and model codes,[9] and the case law of other jurisdictions.
Whereas the prior code, the Uniform Sales Act, required that the plaintiff “rel[y]” upon the seller’s affirmation or promise, the state and model codes require only that they be “part of the basis of the bargain.” Although defendants argue that this change is merely semantic, this Court disagrees.
The comments to G.L.c. 106, §2-313 explain that “part of the basis of the bargain” “is much like, although not the equivalent of, the concept of ‘reliance’ in section 12 of the Uniform Sales Act (G.L.c. 106 §14)” (emphasis added). Massachusetts Code Comment, G.L.c. 106, §2-313. According to the official comments to the Uniform Commercial Code, “(i]n actual practice *23 affirmations of a fact made by the seller about the goods during a bargain are regarded as part of the description of those goods, hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact' (emphasis added). Uniform Commercial Code Comment, U.C.C. §2-313, Comment 3 (West 1989).
Comment 4 to U.C.C. §2-313 states that “the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell.” Uniform Commercial Code Comment, U.C.C. §2-313, Comment 4 (West 1989). “Reliance is irrelevant to what a seller agrees to sell.” Cipollone v. Liggett Group, Inc., 893 F.2d 541, 564 (3rd Cir. 1990), rev’d in part, aff'd in part Cipollone v. Liggett Group, Inc., 112 S.Ct. 2608 (1992).
Thus, the official comments to the U.C.C. make clear that “all of the statements of the seller [become part of the basis of the bargain] unless good reason is shown to the contrary.” Uniform Commercial Code Comment, U.C.C. §2-313, Comment 8 (West 1989). The comments to both the state and model codes indicate that a showing of strict reliance is not required to prove a breach of express warranty. Instead, they indicate that affirmations of fact or promises by the seller become a “part of the basis of the bargain” unless there is clear proof that they should not be treated as such.
Courts have generally not taken this view however. See e.g. Cipollone v. Liggett Group, Inc., 893 F.2d 541, 567 (3rd Cir. 1990), rev’d in part, aff'd in part, Cipollone v. Liggett Group, Inc., 112 S.Ct. 2608 (1992) (“it strains the language [of §2-313] to say that a statement is part of the ‘basis’ of the buyer’s ‘bargain,’ when the buyer had no knowledge of the statement’s existence”). Although some courts have found that reliance need not be shown in order to prove breach of an express warranty, see e.g. Gladden v. Cadillac Motor Car Division, 83 N.J. 320, 416 A.2d 394, 396 (1980) (particular reliance on defendant’s statements of description or quality need not be shown), “the more common view has been that it is, and that either a buyer must prove reliance in order to recover on an express warranty or the seller must be permitted to rebut a presumption of reliance in order to preclude recovery” (emphasis added). Cipollone v. Liggett Group, Inc., supra, 893 F.2d at 564.
In Cipollone v. Liggett Group, Inc., a case closely analogous to the case at bar, the Third Circuit held that “once the buyer has become aware of the affirmation of fact or promise, the statements are presumed to be part of the ‘basis of the bargain’ unless the defendant, by ‘clear and affirmative proof,’ shows that the buyer knew that the affirmation of fact or promise was untrue.” Id. at 568. If the defendant proves that the buyer did not believe the warranty, the plaintiff would then be given the opportunity to show reliance on the warranty despite his or her disbelief.[10] Id. at 568 n.31.
The United States District Court for the District of Massachusetts discussed the meaning of the phrase “part of the basis of the bargain” in Stuto v. Corning Glass Works, Prod. Liab. Rep. para. 12,585 at 37,582 (CCH 1990). In dicta, the court stated that “[although no Massachusetts court has ruled explicitly on this issue, this court believes that some minimum of reliance is a required element of a breach of express warranty claim in this state.” Id. In Stuto the plaintiff could not recall having seen or heard advertisements in which the defendant manufacturer guaranteed plaintiffs glass plate to be unbreakable. Thus, the court found that the plaintiff could not have “relied” upon any express warranty contained in defendants’ advertisements.
In addition, in Stuto the court found that the operation of any express warranty was negated by plaintiffs knowledge that the seller’s affirmations or promises were not true. The court emphasized that it is common knowledge that if a person carrying a glass plate falls on the plate on a brick walkway, the plate will break no matter what the guarantee. The court noted that the plaintiff knew of cases in which the same type of plate had broken. Id. at 37,582-83. The court also found that the language of the advertisements, all but one of which stated that the defendant would replace any plates that broke, defeated the plaintiffs express warranty claim. Id. at 37,583.
In the case at bar, plaintiffs submitted evidence that Mr. Fahey read the Boston Globe, as well as various national publications, in which defendants allegedly made express warranties. In addition, there is conflicting evidence as to what Mr. Fahey knew about the health hazards of smoking.[11]
What affirmations of fact or promises of the defendants Mr. Fahey saw or heard and which of those, if any, should not be considered “part of the basis of the bargain” are questions of material fact for the jury. Therefore, summary judgment on these counts is inappropriate.
COUNTS IV — XI: FRAUDULENT AND NEGLIGENT MISREPRESENTATION
In Counts IV[12] through XI of their complaint, plaintiffs allege that defendants Reynolds, Philip Morris, TI, and CTR, intentionally, recklessly, or negligently misrepresented to plaintiff Richard Fahey the hazardous effects of smoking. According to plaintiffs, Mr. Fahey relied on such misrepresentations to his detriment.
To succeed on a claim of fraudulent misrepresentation plaintiffs must show that the defendants made false representations of material fact with knowledge of their falsity or with reckless disregard for their truth or falsity. The false statements must have been made for the purpose of inducing Mr. Fahey to act thereon. *24 In addition, Mr. Fahey must have reasonably relied upon the representations as true and must have acted upon them to his detriment. Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982); Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963); Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 444 (1975). To prove fraudulent intent it is sufficient to show “proof of a statement made, as of the party’s own knowledge, which is false, provided the thing stated is not merely a matter of opinion, estimate, or judgment, but is susceptible of actual knowledge.” Actual intent to deceive on the part of the defendants need not be shown. Powell v. Rasmussen, 355 Mass. 117, 118 (1969) (quoting Chattham Furnace Co. v. Moffat, 147 Mass. 403, 404 (1888).
To succeed on a claim of negligent misrepresentation, plaintiffs must show that the defendants made false statements about important facts without using the amount of care a reasonable person would use in those circumstances to see that what s/he said was true. Plaintiffs must also prove that Mr. Fahey reasonably relied on those statements, that he suffered damage as a result of his reliance, Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523 (1989) cert. denied, 493 U.S. 894 (1989); Danca v. Taunton Savings Bank, supra, 385 Mass, at 8-10, and that he was in privity with the defendants. In Re Bank of Boston Corp. Securities Litigation, 762 F.Supp. 1525, 1536-37 (D.Mass. 1991); Hurley v. Federal Deposit Ins. Corp., 719 F.Supp. 27, 34 (D.Mass. 1989). For negligent misrepresentation, plaintiffs need not prove an actual intent to deceive on the part of the defendants. Robertson v. Gaston Snow & Ely Bartlett, supra, 404 Mass, at 523; Danca v. Taunton Savings Bank, supra, 385 Mass. at 8-10.
Although the defendants had no duty to volunteer information, if they disclosed partial information which may have been misleading, they had a duty to reveal all of the material facts known to them to avoid deceiving the plaintiff. Kannavos v. Annino, 356 Mass. 42, 48 (1969); V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411 (1st Cir. 1985).
Plaintiffs submitted evidence showing that defendant TI published advertisements and statements in the Boston Globe, as well as in national publications, challenging the validity of the scientific data which concluded that smoking caused human disease including cancer. Plaintiffs have also submitted evidence showing that Mr. Fahey read the Boston Globe and other national publications. Additionally, plaintiffs have offered evidence showing that approximately 15 current or former officers or directors of defendant Reynolds and approximately 9 current or former officers or directors of defendant Philip Morris have served on TI’s executive committee. Likewise, there is evidence that approximately 16 current or former officers or directors of defendant Reynolds and approximately 10 current or former officers or directors of Philip Morris have been members of CTR’s board of directors. Finally, evidence has been submitted showing that many members of TI’s executive committee have also been members of CTR’s board.
This Court finds that there are genuine issues of material fact as to how much control defendants Reynolds and Philip Morris had over defendants TI and CTR during the relevant years. Additionally, what affirmations of fact or promises each defendant made and whether Mr. Fahey acted reasonably in relying on the defendants’ promises or assertions are questions of fact for the jury. Therefore, summary judgment is inappropriate on all of the intentional and negligent misrepresentation counts.
COUNT XII: FAILURE TO WARN
In Count XII of their complaint plaintiffs allege that defendant Reynolds knew or should have known prior to 1966 that cigarette consumption was hazardous to human health. Plaintiffs further allege that the defendant sold Winston cigarettes to Mr. Fahey without warning him of the danger. As a result, Mr. Fahey continued to smoke Winston cigarettes and was thereby injured.
Under Massachusetts law a manufacturer has a duty to warn of dangers inherent in the use of its product if it knows or reasonably should have known that the product is likely to be dangerous when used in the manner in which the plaintiff used the product. MacDonald v. Ortho Pharmaceutical Corp., 394 Mass. 131 135 (1981), cert. denied 474 U.S. 920 (1985); Schaeffer v. General Motors Corp., 372 Mass. 171, 173-174 (1977); Mitchell v. Sky Climber, Inc., 396 Mass. 629, 631 (1986); Marc C. Perlin, Mattla’s Proof of Cases in Massachusetts §32:48 at 742 (3rd ed. 1992). A manufacturer also has a duty to warn if it was reasonably foreseeable that one less knowledgeable than the manufacturer could be injured if a warning of the danger was not given. Fiorentino v. A.E. Staley Mfg. Co., 11 Mass.App.Ct. 428, 433 (1981); Perlin, supra, §32:52 at 744-45.
Failure to warn of hazards associated with foreseeable uses of a product is negligence if the failure to warn proximately causes the plaintiffs injuries. Laaperi v. Sears Roebuck & Co., 787 F.2d 726, 730 (1st Cir. 1986); Perlin, supra, §32:40 at 735. A plain tiff does not have to prove that the product was negligently designed or manufactured. Schaeffer v. General Motors Corp., supra, 372 Mass. at 173; Perlin, supra, §32.41 at 736.
Although Mr. Fahey is entitled to the presumption that had a warning been given he would have heeded it, Harlow v. Chin, 405 Mass. 697, 713 (1989), plaintiffs may not recover if it is shown that Mr. Fahey knew of the danger the warning would have described. Fiorentino v. A.E. Staley Mfg. Co., supra, 11 Mass.App.Ct. at 436; Neimann v. Westinghouse Elec. Corp., 32 Mass.App.Ct. 992, 993 (1992), rev. denied 413 Mass. 1105 (1992); Perlin, supra, §32:57 at 748. *25 Additionally, a manufacturer has no duty to warn if the danger is obvious or well-known. Maldonado v. Thomson Nat’l Press Co., 16 Mass.App.Ct. 911, 912, 913 (1983), app. denied 389 Mass. 1105 (1983); Bavuso v. Caterpillar Industrial Inc., 408 Mass. 694, 699 (1990); Perlin, supra, §32:58 at 749. However, unless the danger inherent in a product is obvious as a matter of law, the obviousness of the danger is a question of fact for the jury. Laaperi v. Sears, Roebuck & Co., supra, 787 F.2d at 731-32; Perlin, supra, §32:59 at 749.
This Court finds that prior to 1966 the risks associated with smoking were not obvious as a matter of law. Thus, how well known the risks of smoking were prior to 1966, what risks associated with smoking Winston cigarettes defendant Reynolds knew or should have known of prior to 1966, the extent of Mr. Fahey’s knowledge of those risks prior to 1966, and whether Mr. Fahey would have changed his behavior if a warning had been provided by the defendant are questions of fact for the jury. The granting of summary judgment on these counts is inappropriate.
COUNTS XIII — XIV: DEFECTIVE DESIGN — NEGLIGENCE
Plaintiffs allege in Counts XIII and XIV of their complaint that defendants Reynolds and Philip Morris defectively manufactured and/or designed their products, that plaintiff believed these products to be designed in a reasonable and safe manner, and that plaintiff suffered serious injury as a result of their defective design. According to the plaintiffs, defendants’ manipulation of the tar and nicotine levels of their cigarettes makes them both addictive and carcinogenic. As such, the plaintiffs allege that these cigarettes were defectively designed.
A manufacturer has a duty to design a product with reasonable care so as to eliminate avoidable dangers. Fahey v. Rockwell Graphic Systems, Inc., 20 Mass.App.Ct. 642, 647 (1985); Uloth v. City Tank Corp., 376 Mass. 874, 878 (1978). The applicable standard of care is that of an “ordinary reasonably prudent designer in like circumstances.” Fahey v. Rockwell Graphic Systems, Inc., supra, 20 Mass.App.Ct. at 647.
A product that functions as intended, is accompanied by warnings, and whose danger is obvious may still be negligently designed if it is made “according to an unreasonably dangerous design and when it does not meet consumer’s reasonable expectations as to its safety. The focus is on the design itself, not on the manufacturer’s conduct.” Richard W. Bishop, Prima Facie Case — Proof and Defense §890 (West 1987); Fahey v. Rockwell Graphic Systems, Inc., supra, 20 Mass.App.Ct. at 648. Plaintiffs must also show that defendants’ negligent design proximately caused Mr. Fahey’s injuries. Bishop, supra, at §891.
In evaluating the reasonableness of a product’s design, factors to be considered include (1) the manufacturer’s knowledge or appreciation of the risks associated with the product; (2) the gravity of the danger of the design, if any; (3) the feasibility and cost of a safer design; and (4) the negative consequences of an alternative design to the product and the consumer. Back v. Wickes Corp., 375 Mass. 633, 642 (1978).
Although defendants have not met their burden of showing the absence of a triable issue, plaintiffs have submitted admissible evidence showing that defendants knew the risks associated with smoking, had the ability to manipulate tar and nicotine levels in cigarettes, and were aware of alternative designs.
This Court finds that questions of fact exist as to the extent of defendants’ knowledge of the risks associated with smoking, the degree to which defendants were able to manipulate tar and nicotine levels, and the feasibility of a safer design alternative. Summary judgment is therefore inappropriate on this count.
COUNT XV: CONSPIRACY-FRAUD/MISREPRESENTATION
In Count XV of their complaint, plaintiffs allege that defendants Reynolds, Philip Morris, TI, and CTR conspired to fraudulently conceal or misrepresent the hazardous effects of smoking. According to the plaintiffs, TI and CTR were created to strengthen the legal and economic positions of the defendants and that such a combination of actors “created a power among the industry that the companies would not have had singularly.”
In order to prevail on their conspiracy claim plaintiffs must prove that (1) some or all of the defendants’ acted in concert with others to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means; (2) as a result of their acting together the defendants had some peculiar power of coercion over Mr. Fahey they would not have had they each acted alone; and (3) the defendant’s actions proximately caused Mr. Fahey’s damages. Richard W. Bishop, Prima Facie Case — Proof and Defense §981 at 191-92 (West 1987). These issues generally involve questions of fact for the jury. Id. at 193.
According to the Restatement (Second) of Torts, a party is liable for harm to a third person as a result of the tortious conduct of another if s/he “(a) does a tortious act in concert with the other or pursuant to a common design with him [common design theory], or (b) knows that the other’s conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself’ [substantial approach theory].[13] Restatement (Second) of Torts §876(a) and §876(b) (1979) (quoted in Kyte v. Philip Morris, Inc., 408 Mass. 162, 166-67 n.5 (1990)); see also Payton v. Abbott Labs, 512 F.Supp. 1031, 1034-35 (1981).
*26 To prove conspiracy under the common design theory, plaintiff must show that the defendants had an agreement to perform a tortious act or to achieve a tortious result. Payton v. Abbott Labs, supra, 512 F.Supp. at 1035. The agreement between the defendants need not have been explicit. However, parallel conduct alone is not sufficient to show an agreement. Payton v. Abbott Labs, supra, 512 F.Supp. at 1037.
Under the substantial approach theory, plaintiffs must show that the defendants had knowledge of their substantial, supporting role in an unlawful enterprise. Kyte v. Philip Morris, Inc., supra, 408 Mass, at 168. General awareness of the unlawful activity is not sufficient. Id.
Although defendants have not met their burden of showing the absence of a triable issue, plaintiffs have offered evidence of the interconnectedness of the officers and directors of defendants CTR and TI with the officers and directors of defendants Reynolds and Morris. Plaintiffs have also offered admissible evidence of the advertising and publicity campaigns conducted or funded by TI and CTR and of defendant TI’s conscious attempt to get other members of the tobacco industry to work to change public perception about cigarettes and health.[14]
Whether any or all of the defendants acted together to fraudulently misrepresent smoking’s hazards, whether defendants acting together had some peculiar power of coercion over the plaintiff they would not have had acting singularly, and whether defendants knowingly played a substantial, supporting role in an unlawful enterprise are questions of fact for the jury.[15] Therefore, summary judgment is inappropriate on this count.
COUNTS XVI — XIX: LOSS OF CONSORTIUM
Plaintiffs allege that as a result of defendants Reynolds, Philip Morris, TI and CTR’s conduct, Mrs. Fahey expended monies for medical care and attendance of Mr. Fahey. In addition, plaintiffs allege that Mrs. Fahey suffered the loss of comfort, companionship and consortium of her husband, Mr. Fahey.
Although loss of consortium is an independent claim, Fidler v. E.M. Parker Co., 394 Mass. 534, 547 (1985); Sena v. Commonwealth, 417 Mass. 250, 264 (1994), a prerequisite to suing for loss of consortium is that the injured spouse have a viable claim. Sena v. Commonwealth, supra, 417 Mass, at 264.
This Court finds that plaintiffs have viable claims on all counts of their complaint. Defendants have offered no evidence challenging plaintiffs claim of loss of consortium.[16] Therefore, summary judgment is inappropriate on this claim as well.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion for summary judgment is DENIED on all counts.

Plaintiff Richard Fahey died of laryngeal cancer on December 18, 1992. Plaintiff Shirley Fahey is the wife of plaintiff Richard Fahey.

No the extent that the summary judgment materials reveal disputed factual allegations, I accept, for this motion only, the version of the facts most favorable to the plaintiffs.

Defendants, arguing that these allegations have not been substantiated in the record, reserved their rights “to move on this point at a later time, if necessary.”

TI argues that its purpose is to promote a “full and fair debate” on the issue of smoking and human disease.

For example, in 1964, Bowman Gray, chairman of the board of directors of defendant Reynolds, speaking before a committee of the House of Representatives on behalf of the tobacco industry, testified that “(m]any distinguished scientists are of the opinion that it has not been established that smoking causes disease.” He also requested that Congress take no action “with respect to smoking without giving just and appropriate weight to the beneficial effects of smoking.” In arguing against mandatory warnings on cigarette packages and in advertising, he asked that “the required caution [ ] be fair and factual. It should be phrased in a way which reflects the lack of clinical and laboratory scientific evidence of the relationship between smoking and health.”
In 1982, Edward Horrigan, Jr., then chairman and CEO of defendant Reynolds and chairman of the executive committee of TI, testified before a House subcommittee on the “Comprehensive Smoking Prevention Education Act" that “science to date after much research including over $100 million funded by our industry, indicates that no causal link [between smoking and human disease] has been shown.” He also stated that “[t]here is absolutely no proof that cigarettes are addictive . . .”

In the leading Massachusetts cases on express warranties, the plaintiffs testified that they relied on the seller’s representations. Thus, the courts have not addressed what evidence, other than that of actual reliance, supports a finding that a representation was “part of the basis of the bargain.” See, e.g., Hannon v. Original Gunite Aquatech Pools, Inc., 385 Mass. 813, 822 (1982) (plaintiff testified that he relied upon defendant’s promotional material which stated that an Aquatech pool would be of the highest quality); Roth v. Ray-Stel Hair Stylists, Inc., 18 Mass.App.Ct. 975, 976 (1984) (testimony that plaintiff relied on defendant’s statements that the hair bleach would not cause injury if used properly).

The text of G.L.c. 106, §2-313 is exactly the same as that ofU.C.C. §2-313.

The court emphasized that it was not adopting a rebut-table presumption of reliance. Instead, “(r)eliance only comes into play if, after the defendant has proved non-belief, the plaintiff then tries to prove reliance despite non-belief, and if she meets that burden she can collect economic damages.” Id.

Although the defendants have not proved that Mr. Fahey did not believe the warranty, if they did, under the Third Circuit’s interpretation, plaintiffs would then be given the opportunity to show that Mr. Fahey relied on the warranty despite his disbelief.

Count III was against Stop & Shop, Inc., a defendant voluntarily dismissed from the case.

We review §876(a) and §876(b) here because these are the theories under which plaintiffs bring their claim. It should be noted, however, that in Kyte v. Philip Morris, Inc., Justice Wilkins stated that “ [w]e shall not pause to determine whether *27 the principles of §876 and the law of the Commonwealth are, in all respects, in complete accord.” Kyte v. Philip Morris, Inc., 408 Mass. 162, 167 (1990).

In a 1981 presentation to the executive committee of TI, which included officials of both defendants Reynolds and Philip Morris, Horace Kornegay, TI’s chairman, stated that “[o]ur goal today is to gain your enthusiastic support for a new way of life in the public affairs responsibilities of this industry in general and The Institute in particular and our goal in that effort is to change public opinion and reduce public pressure.” He explained that this meant not “just picking quarrels with specific proposals. We do mean turning aside the impulses which lead to their introduction. This means turning public opinion into beliefs that some problems don’t exist, that other problems are overstated and that still other problems can be solved without laws and regulations.”

This Court is not saying that each of these elements must be proven. The Court is saying that under each theory questions of fact exist.

Even if they had, plaintiff Shirley Fahey submitted sufficient evidence on this issue to create a triable issue.