Jose E. BUDET–CORREA Plaintiff

v.

UNITED PARCEL SERVICE, INC. Defendant

No. CIV. 99–1971CCC.

United States District Court, D. Puerto Rico.

Feb. 23, 2004.

Federico Lora–López, Esq., San Juan, PR, for Plaintiff.

Ricardo F. Casellas, Esq., San Juan, PR, for Defendant.

## ORDER

CEREZO, District Judge.

Before the Court is the Motion and Memorandum of Law in Support of New Trial or for Remittitur filed by defendant United Parcel Service, Inc. (UPS) (**docket entry 100**), plaintiff's opposition (**docket entry 103**), UPS's Supplemental Motion and Reply Memorandum to Plaintiff's Omnibus Opposition (**docket entry 107**)[1] and

plaintiff's Opposition to the Supplemental Motion (**docket entry 108**).

Although UPS's motion and its supplement are grounded on various arguments, the Court will comment only on three of the matters raised by defendant.

■ As to the sufficiency of the evidence, the jury had before it evidence that defendant UPS considered plaintiff José E. Budet–Correa (Budet) a suspect with regard to death threats to its Manager and the planting of an explosive device in his car. There was also evidence that UPS hired a security company, that Budet was the subject of surveillance, and that he received on August 24, 1998 what he described as a death threat from UPS' security officer Jorge Rodríguez–Martínez. The jurors also had ample evidence presented by defendant in its effort to convince them that plaintiff Budet was the person responsible for the criminal actions taken against the company and its Manager, although Mr. Budet was never charged with the commission of any crime. The parties' conflicting versions as to the respective roles was resolved by the jury in plaintiff's favor. Although there is only one piece of concrete evidence, the August 24, 1998 call from Mr. Rodríguez–Martínez, who was at the time a supervisor in UPS' security department, to plaintiff Budet's cellular phone which Mr. Budet referred to the Police of Puerto Rico as a death threat, there was other circumstantial evidence in support of plaintiff's claim. We cannot conclude, as defendant argues, that the jury's verdict is the result of undue prejudice against it or sympathy for plaintiff, bereft of any evidence and contrary to law.

---

1. Accordingly, UPS's Motion for Leave to File Reply (docket entry 104) is MOOT, while its Motion for Enlargement of Time to Supplement the Post–Judgment Motions and Reply to Plaintiff's Omnibus Opposition for Good Cause (docket entry 105) is GRANTED.

Defendant also charges that the Court unduly prejudiced it by erroneously allowing to be read to the jury four lines of the August 22, 2000 Report of Dr. Carmen Martínez, psychiatrist (Plaintiff's Id. No. 4). Dr. Martínez evaluated Mr. Budet as a consultant for the Social Security Administration (SSA). This is a 4–page report which contains many observations made by the psychiatrist during her evaluation, such as that plaintiff was in partial contact with reality, describes him as an isolated person who needed help with his personal hygiene, with poor concentration, poor social judgment, poor control of impulses, poor tolerance of frustration, poor introspection, unable to interpret daily situations, incapable of managing his funds and with the diminished capability to remember, concentrate, persevere, interact and adapt. The prognosis was reserved. None of these findings nor any other portion of Dr. Martínez' report was disclosed to the jury. The report was not admitted in evidence. The only portion read to the jury was Axis I of the Diagnostic Impression reached by Dr. Martínez which states:

Severe mayor (sic) depression with Single Episode Psychotic Traits

Abuse of Cannabis in Remission

R/O Disorder of Persecution Type Delusions

R/O Schizoaffective Disorder

Defendant fails to state in its discussion of this issue that plaintiff' Exhibit 6, *i.e.* the disability determination of the SSA dated December 14, 1999, expressly refers to Dr. Martínez' report. This exhibit reflects that Mr. Budet was found to be disabled since July 1, 1999, that the primary diagnosis was "affective disorder," and the finding set forth in item 34 of the disability determination is "claimant incapable per Dr. Carmen Martínez' report of 8/22/2000."

■ Defendant had emphasized during trial that although Budet's treating psychologist concluded that he was suffering from severe depression, his treating psychiatrist testified that even though he never wrote a diagnosis in any part of Mr. Budet's record during the entire period of treatment, he understood that the patient's correct diagnosis was one of anxiety disorder. The disclosure allowed by the Court of that part of Dr. Martínez' report, which described his diagnosis as "severe major depression with single episode psychotic traits," simply permitted the jury to know the diagnosis on which the SSA relied to grant him disability benefits. Defendant classified Budet's condition in the category of an anxiety disorder based on Dr. Rojas' testimony. Dr. Martínez' diagnosis of severe depression having served as the sole basis for the disability determination made by the SSA, its reading to the jury merely supplemented the information contained in plaintiff's Exhibit 6. Since the Court did not go beyond allowing this brief information, we fail to see where the unfair prejudice to defendant lies.

■ Finally, we must address the argument raised in the supplemental motion charging plaintiff's attorney with having made an improper summation. Specifically, defendant claims that the request by plaintiff's attorney of a dollar amount for pain and suffering during the closing arguments constitutes reversible error which by itself merits a new trial or remittitur of the jury award. In making this assertion, defendant relies on case law which it reads as establishing that references to an ad damnum clause or requests for a dollar amount for pain and suffering are improper arguments. *See Wilson v. Bradlees of New England,* 250 F.3d 10, 23 n. 25 (1st Cir.2001); *Davis v. Browning–Ferris,* 898 F.2d 836, 837 (1st Cir.1990); *Waldorf v. Shuta,* 896 F.2d 723 (3d Cir.1990).

The relevant, and allegedly offending, portion of plaintiff's closing argument follows:

> Now, yes, Mr. Budet is coming here and he's requesting damages, and the Court is going to instruct you about damages. You see, neither the Court, nor you, the jurors, can return two years to this young man's life. You can't. He might have been under the psychotic trait or situation for two years, and you do not have the power to getting (sic) him back to normal for those two years. The only thing the judicial system can do is to repair, to give money as a substitute. Now, yes, in his complaint he makes an allegation, and I told you what his allegation is. He claims a million dollars for his damages. Now, that's a lot of money. Now, ladies and gentlemen, I cannot look at you and say to you a million dollars is a fair number. If you were to ask me and I—again, this is not evidence as you know. I have some experience in this matter. If you were to ask me what's the value of the case, I would tell you I don't know. I cannot put value on a young man's mind for two years, I honestly cannot. That responsibility, unfortunately, goes to you.

> Whatever you decide, if one million is too much, if you think that he did not prove his case, or if you think that $200,000 is too little, whatever you decide, we go with the same spirit that we came the first day. We are sure that whatever your decision is, it's going to be based on fairness and justice...

It is true that the Court of Appeals has stated that the jury should not know the ad damnum, *Davis, supra.*, and expressed that it would be reversible error to allow arguing the ad damnum to the jury. *Wilson, supra.* Here, however, a close perusal of the closing arguments reveals that plaintiff's counsel never argued the ad damnum to the jury, as he only mentioned it but never vouched for its wholesale adoption by the jury. And, while it is evident that the ad damnum was indeed disclosed to the jurors, defendant never objected to it at the time, nor did the Court ever charge the jury that it could consider it. *Cf. Davis, supra.* Given these circumstances, we are convinced that the situation before us is clearly distinguishable from that present in *Davis* and *Wilson* and does not merit, by itself, either a new trial or remittitur of the jury award.

 Still, remittitur would be required if the jury award "exceeded 'any rational appraisal or estimate of the damages that could be based upon the evidence' or was 'grossly excessive,' 'inordinate,' 'shocking to the conscience of the court,' or 'so high that it would be a denial of justice to permit it to stand.'" *Consolo v. George*, 58 F.3d 791, 795 (1st Cir.1995) *quoting Segal v. Gilbert Color Systems, Inc.*, 746 F.2d 78, 81 (1st Cir.1984). The Court has painstakingly reviewed all the trial evidence on the issue of damages, and notes that this claim was strictly based on Budet's pain and suffering and the medical condition that he developed, whether it is classified as an affective disorder, anxiety or depression. Budet's evidence on damages consisted of his testimony, that of his treating physician, and the determination by the SSA awarding him benefits for disability which began on July 1999 and ceased on December 2001. The jury awarded him $825,000.00 as compensation for his injuries. But after reviewing the evidence, we are not satisfied that it supports this jury award. Indeed, we are convinced that the jury award here was grossly disproportionate to the injuries established by the evidence as to be unconscionable as a matter of law. *Havinga v. Crowley Towing and Transp. Co.*, 24 F.3d 1480, 1484 (1st Cir.1994). *Cf. Marchant v.*

*Dayton Tire & Rubber Co.*, 836 F.2d 695, 703–04 (1st Cir.1988) ($550,000 pain and suffering award unconscionable when, among other things, injury did not cause plaintiff significant financial losses); *Anthony v. G.M.D. Airline Servs.*, 17 F.3d 490, 494 (1st Cir.1994) ($566,765 pain and suffering award vacated because, among other things, there was no testimony or other evidence that plaintiff's condition was permanent). The Court FINDS that the award for damages must be reduced to $250,000.00 which constitutes the highest reasonable compensation for the injuries actually suffered for which there is adequate evidentiary support. *Laaperi v. Sears, Roebuck & Co., Inc.*, 787 F.2d 726, 734 (1st Cir.1986). If plaintiff fails to remit $575,000, a new trial on the issue of damages will then be held. *See Anthony,* 17 F.3d at 495.

Accordingly, and for the reasons stated, UPS's Motion (**docket entry 100**) and Supplemental Motion (**docket entry 107**) for new trial are DENIED. The request for a remittitur, however, is GRANTED. Plaintiff shall inform the Court within the term of twenty (20) days after notice if he will remit as ordered above, or will opt instead for a new trial. **If plaintiff fails to remit, the new trial on damages will be held on March 26, 2004 at 10:00 A.M.**

SO ORDERED.