PRESENT: All the Justices

OMEGA PROTEIN, INC., ET AL.

OPINION BY
v.  Record No. 112096        JUSTICE ELIZABETH A. McCLANAHAN
SEPTEMBER 14, 2012
RONALD FORREST

FROM THE CIRCUIT COURT OF GLOUCESTER COUNTY
R. Bruce Long, Judge

In this appeal, we consider whether Ronald Forrest proved in his personal injury action under the Jones Act, 46 U.S.C. § 30104, that his injury was caused by his employer's alleged negligence.  Concluding that Forrest did not present evidence establishing causation, we reverse the trial court's award of damages to Forrest upon a jury verdict, and enter final judgment in favor of appellants, Omega Protein, Inc., Omega Protein Corporation and the F/V Tideland (collectively "Omega"), the three defendants below.

BACKGROUND

Forrest sued Omega for an injury to his back sustained in the course of his employment with Omega as a crew member aboard the F/V Tideland, a commercial fishing vessel operated out of Reedville.  One of Forrest's duties, as first mate, was to assist with tying up the vessel as it docked.  This involved "jump[ing] off the [vessel] to catch the lines on the dock." Forrest had performed this duty hundreds, if not thousands, of times before the subject accident.  In doing so at one of

Omega's docks in Reedville during the 2005 fishing season,
Forrest jumped from the vessel to the dock, fell and injured
his back. Forrest alleged in his amended complaint that this
accident was caused by Omega's negligence, rendering Omega
liable for his back injury under the Jones Act.[1] See 46 U.S.C.
§ 30104 (establishing statutory cause of action for seamen).
Forrest specifically alleged, among numerous other acts, that
Omega was negligent in "giving [him] clearance to perform [his]
job duties" in light of his "prior medical history."

As of 2005, Forrest, then fifty-five years old, had worked
for Omega as a commercial fisherman for nearly thirty years,
and had been a first mate for approximately the last eight of
those years. Like Omega's other fishermen, Forrest was "laid
off" by Omega at the end of each annual fishing season and then
"rehired" at the beginning of the next fishing season.
However, before rehiring Forrest and the other fishermen
seeking reinstatement, Omega required, as a safety procedure,
that the fishermen undergo annual pre-employment physicals to
determine whether they were physically fit for the job. Over
Omega's objection, Forrest presented evidence that in Louisiana
Omega obtained magnetic resonance imaging scans ("MRIs") on its

---

[1] Forrest also sued Omega for the alleged unseaworthiness
of the F/V Tideland under general maritime law. See Mitchell
v. Trawler Racer, Inc., 362 U.S. 539, 542-50 (1960). That
claim, upon which the jury rendered a verdict against Forrest,
is not at issue in this appeal.

fishermen based in Louisiana as part of their annual pre-employment physicals; but for its fishermen in Virginia the company only obtained x-rays as part of that process. [2]

Based on Omega's pre-employment procedure in Louisiana and Forrest's back-related medical history, Forrest's ultimate negligence liability theory at trial was that Omega breached its duty of care by not obtaining an MRI as part of his 2005 pre-employment physical. Because of Omega's knowledge of his back "problems" extending back to 1984, according to Forrest, Omega should have first obtained an MRI to determine his physical fitness for continued employment as a commercial fisherman. Had an MRI been done, Forrest asserted, it would have shown that he was unfit for the job; Omega would not have rehired him; and the subject accident would not have occurred. Forrest contended Omega was therefore liable under the Jones Act for the damages he incurred as a result of his injury from the accident.

---

[2] Omega objected to the introduction of this evidence based on, inter alia, the contention that it constituted improper evidence of internal company policy as a basis for establishing Omega's duty of care. See Pullen v. Nickens, 226 Va. 342, 350-51, 310 S.E.2d 452, 456-57 (1983). The trial court overruled Omega's objection and permitted testimony regarding Omega's use of MRIs in Louisiana but not in Virginia in conducting the fishermen's pre-employment physicals. The court's ruling on this issue is the basis of Omega's third assignment of error in this appeal. However, because of our ruling on Omega's first assignment of error regarding Forrest's lack of proof of causation, we need not address the merits of its third assignment of error. See note 6, infra.

To establish that Omega was "on notice" of Forrest's back-related medical history when it rehired him in 2005, Forrest presented evidence of documentation from Omega's records[3] indicating the following: in 1984, Forrest strained his lower back, but did not miss any work as a result of that condition; in 1992, Forrest strained his back and was restricted to light duty for four days; in 1994, Forrest again sustained a back strain; in 1995, Forrest hurt his neck in a work-related accident, and around the same time it was reported that he was wearing a back brace; and in 1999, Forrest was diagnosed with "lumbar disc syndrome" and was off work for approximately a month.

In response, Omega introduced documentation from Forrest's 2004 and 2005 pre-season physicals indicating that x-rays showed he had lumbar spine degenerative joint disease, and that the x-ray in 2005 showed "spurs" at L5 - which was part of the degenerative process. However, the physician who did these two physicals concluded that Forrest was medically "[c]leared for duty."[4] Omega also introduced documents related to Forrest's

---

[3] The trial court allowed the admission of this evidence "solely for the limited purpose of showing notice to [Omega]," and not for the "factual[] accura[cy]" of the information "in terms of a diagnosis."

[4] Doctor Zoran Cupic, an orthopedic surgeon who first treated Forrest several months after the subject accident, explained during his testimony that "[m]ost people by the age of 40 have some degeneration."

employment agreements for both 2004 and 2005 in which Forrest represented that he did not have any injury or illness that would "prevent [him] from performing any function of [his] job as a fisherman both safely and upon the sea for extended periods of time."  Consistent with these representations, Forrest did not offer any evidence indicating he missed any work due to a back-related condition between 1999 and the time of the subject accident in 2005.

As to proof of causation, Forrest sought to establish a casual connection between Omega's prior knowledge of his back-related medical history, Omega's failure to obtain a pre-employment MRI of his back in 2005, and his subject accident on August 11, 2005, through the testimony of (i) Dr. Zoran Cupic, (ii) Donald Green, Forrest's expert witness in the area of maritime safety, and (iii) W. Thomas Blencowe, a former Omega human resource manager, whom Forrest called as an adverse witness.  Over Omega's objection, Dr. Cupic testified that "from a pre-employment physical standpoint," because of the report of spurs on Forrest's lumbar spine, Omega should have "do[ne] an MRI to make sure what that MRI shows"; and "<u>if</u> there are a lot of problems not allow him to go back to work [doing] any kind of heavy lifting and things like that." [5]  (Emphasis

---

[5] Omega objected to the introduction of this testimony on the grounds that it constituted an expert opinion by a treating

5

added.)  Green testified that based on Forrest's medical history "a good, safe maritime employer" would have sent him "to a specialist to have a full evaluation."  Finally, Blencowe testified that if Omega knew from obtaining an MRI that a fisherman had two herniated discs, he would "not pass" the company's pre-employment physical.  Forrest presented no evidence, however, showing that he had two herniated discs prior to his 2005 accident.

At the conclusion of Forrest's case-in-chief, Omega moved to strike, arguing, among other things, that Forrest did not offer any medical evidence to prove that in 2005 an MRI would have shown that "he was unemployable medically and, therefore, should not have been allowed to continue working [for Omega] or put on light duty."  The trial court ruled that Forrest had made out a prima facie case and denied the motion.  At the close of all of the evidence, Omega renewed its motion, which the trial court again denied.

---

physician in violation of Code § 8.01-399(B), as it was not part of Dr. Cupic's diagnosis and treatment plan for Forrest and was not included in his treatment records.  The court's ruling on this issue is the basis of Omega's second assignment of error in this appeal.  However, as with Omega's third assignment of error, because of our ruling on Omega's first assignment of error regarding Forrest's lack of proof of causation, we will also not address the merits of its second assignment of error.  See notes 2 and 6, infra.

In closing argument, Forrest's counsel presented the theory of Omega's liability to the jury specifically disclaiming that the jump had any impact on causation:

> It's not about the jump. Ronald jumped, and he hurt his back. But he never should have been in a position where he had to jump, because if it wasn't the jump, it would have been the week after when he was pulling on a net. Or it would have been the month after with something else.
>
> Because of Ronald's back, he was a ticking time bomb. It was [sic] matter of time until this happened. And that's why they never should have had him cleared for full duty. If Omega would have followed their own policy, if they would have gotten him the pre-employment MRI, had him checked by a specialist, the fact is we wouldn't be here.

Specifically addressing the jury instruction defining negligence under the Jones Act, Forrest's counsel told the jury Omega was negligent for failing to do the MRIs: "So when you're asked, [w]as Omega negligent, the answer is yes, they were negligent for failing to do the MRIs."

The jury returned a verdict for Forrest in the amount of $768,788.14, but found that he was thirty percent at fault under the jury's allocation of comparative negligence of the parties, as provided for under the Jones Act. Afterwards, Omega moved for a new trial, renewed its motion to strike, and moved to set aside the verdict as contrary to the law and the evidence. Upon hearing argument on Omega's motions, the trial

court denied the motions and entered judgment for Forrest in the amount of $538,151.50.  This appeal followed.[6]

## ANALYSIS

Where the trial court has denied the defendant's motion to strike the plaintiff's evidence or to set aside a jury verdict, as here, " 'the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff.' "  Sunrise Continuing Care, LLC v. Wright, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009) (quoting Bitar v. Rahman, 272 Va. 130, 141, 630 S.E.2d 319, 325-26 (2006)).  Upon such review, we will not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it.  Bennett v.

_____

[6] We granted Omega's petition for appeal on the following three assignments of error challenging the trial court's judgment approving the jury's verdict in favor of Forrest under the Jones Act:

1. The trial court erred in denying defendants' motions to strike and submitting expert opinion testimony about the adequacy of defendants' pre-employment medical examinations to the jury after plaintiff failed to present any competent medical testimony establishing the required element of causation.

2. The trial court erred in permitting plaintiff's treating physician to provide the undesignated expert opinion that a finding of disc disease on pre-employment x-rays should have caused defendants to order an MRI.

3. The trial court erred in admitting testimony regarding Omega's practice of using MRI's in its pre-employment medical examinations in its Louisiana operations but not in its Virginia operations because such evidence is inadmissible under Virginia law.

_Sage Payment Solutions, Inc._, 282 Va. 49, 54, 710 S.E.2d 736, 739 (2011); _Syed v. ZH Technologies, Inc._, 280 Va. 58, 68, 694 S.E.2d 625, 631 (2010).

Omega argues that, even assuming arguendo it was negligent in failing to obtain an MRI in conjunction with Forrest's 2005 pre-employment physical, Forrest failed to present any medical evidence that an MRI would have shown he was no longer physically fit to work as a commercial fisherman.  Therefore, Omega contends, Forrest failed to prove that Omega's alleged negligence caused the subject accident by Omega's decision to rehire him.  We agree with Omega and will reverse the judgment against it on that basis.

The Jones Act provides a statutory cause of action in negligence for a seaman who has suffered personal injury during the course of his employment.  46 U.S.C. § 30104.[7]  By its express terms, the Act " 'incorporates the judicially developed doctrine of liability of the Federal Employers Liability Act' [FELA], which governs the injury claims of railroad workers." _Aggarao v. MOL Ship Mgmt. Co._, 675 F.3d 355, 371 n.14 (4th Cir. 2012) (quoting _Martin v. Harris_, 560 F.3d 210, 216 (4th Cir.

---

[7] The Jones Act specifically states, in relevant part: "A seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer.  Laws of the United States regulating recovery for personal injury to . . . a railway employee apply to an action under this section."  46 U.S.C. § 30104.

9

2009)).  Accordingly, to prevail on a claim under the Jones Act, a plaintiff must prove " '(1) that he is a seaman under the Act; (2) that he suffered injury in the course of his employment; (3) that his employer was negligent; and (4) that his <u>employer's negligence caused his injury</u> at least in part.' "  <u>Holloway v. Pagan River Dockside Seafood, Inc.</u>, 669 F.3d 448, 451 (4th Cir. 2012) (quoting <u>Martin</u>, 560 F.3d at 216) (emphasis added).

Under the "relaxed" causation standard in Jones Act cases, the employer is liable if its " 'negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.' "  <u>Martin</u>, 560 F.3d at 216-217 (citing <u>Hernandez v. Trawler Miss Vertie Mae, Inc.</u>, 187 F.3d 432, 436 (4th Cir. 1999)).  Indeed, as Forrest emphasizes, this standard for proving causation is sometimes referred to as "featherweight."  <u>Bielunas v. F/V Misty Dawn, Inc.</u>, 621 F.3d 72, 76 (1st Cir. 2010); <u>Ribitzki v. Canmar Reading & Bates, Ltd. P'ship.</u>, 111 F.3d 658, 664 (9th Cir. 1997); <u>Bommarito v. Penrod Drilling Corp.</u>, 929 F.2d 186, 188 (5th Cir. 1991).  But as light as this standard of proof may be, it "must not be relaxed to the point that the Jones Act becomes in effect a workers' compensation statute."  <u>Martin</u>, 560 F.3d at 216-217 (citing <u>Hernandez</u>, 187 F.3d at 436-37).  The employer's negligence must still be " 'a legal cause' of the injury."  <u>Gavagan v. United</u>

States, 955 F.2d 1016, 1019 (5th Cir. 1992) (quoting Chisholm v. Sabine Towing & Trans. Co., 679 F.2d 60, 67 (5th Cir. 1982)); see CSX Transp., Inc. v. McBride, 564 U.S. __, __-__, 131 S.Ct. 2630, 2641-44 (2011) (reaffirming that causation standard in FELA cases does not extend to " 'but for' causation"); Pacific S.S. Co. v. Peterson, 278 U.S. 130, 136-139 (1928) (under the Jones Act, a seaman may "recover compensatory damages for injuries caused by [the employer's] negligence"); Claar v. Burlington Northern Railroad Co., 29 F.3d 499, 503 (9th Cir. 1994) (explaining in FELA case that "plaintiffs still must demonstrate some causal connection between a defendant's negligence and their injuries").  In short, in Jones Act cases, as in FELA cases, the injured employee must prove, among other things, that the employer in some way caused his injury.

Here, Dr. Cupic testified that Omega should have obtained an MRI for Forrest during his 2005 pre-employment physical to determine whether he was physically able to work for Omega as a commercial fisherman.  Dr. Cupic did not offer any opinion, however, as to what the actual results of the MRI would have shown in regard to Forrest's physical capacity.  Omega thus correctly argues that Forrest presented no medical testimony establishing the requisite element of causation.  That is, the fact that Omega rehired Forrest without having him undergo an MRI does not mean that Omega caused him to suffer injury, when

11

Forrest presented no evidence that the MRI would have indicated he was unfit for the job. Given Forrest's negligence theory, it was incumbent upon him to prove that an MRI would have indicated he was unfit, yet Omega rehired him anyway. See Holloway, 669 F.3d at 451; Martin, 560 F.3d at 216; Hernandez, 187 F.3d at 436 (plaintiff seaman bears burden of proof on all elements of his Jones Act negligence claim). Forrest did not offer any such proof; and the "featherweight" standard for proving causation, of course, did not relieve him of the burden of presenting at least some evidence of the causal connection between Omega's alleged negligence and his injury. See Bielunas, 621 F.3d at 76; Ribitzki, 111 F.3d at 664; Bommarito, 929 F.2d at 188-89 (explaining "featherweight" standard in terms of amount of causation proof required).

This gap in Forrest's evidence was not satisfied by the testimony of Green, his maritime safety expert, or Blencowe, the former Omega human resource manager. Green's testimony was similar to that of Dr. Cupic: based on Forrest's medical history, it was Green's opinion that Forrest should have been referred to a specialist for a "full evaluation" before Omega made the decision in 2005 to rehire him. As to Blencowe, he was responding to a hypothetical from Forrest's counsel when he acknowledged during his testimony that a fisherman would not pass Omega's pre-employment physical if it knew from an MRI

12

that the fisherman had two herniated discs.  Because there was no evidence that Forrest had any herniated discs at the time Omega rehired him in 2005, this response was irrelevant.

Forrest tacitly acknowledges that he presented no causation evidence by his assertion on brief that "all [he] was required to prove to 'close the loop' on the featherweight standard of causation is exactly what the evidence at trial showed; namely, that his prior medical history was serious enough that he should not have been permitted to engage in the job functions at issue without further pre-employment testing." Once again, there was no evidence, medical or otherwise, that Forrest was, in fact, unfit for employment as a commercial fisherman when rehired by Omega in 2005 (after having done that work for Omega the previous six annual fishing seasons without missing a day of work for any back-related problems).

Still, Forrest asserts that the jury was entitled "to infer that an MRI in 2005 would have revealed back problems that should have restricted [him] from the activities that he was performing at the time he was injured."  We disagree.

When the issue of causation went to the jury on the record here presented, the jury was able to do no more than speculate about what an MRI would have revealed – and thus necessarily base Omega's liability on mere speculation or conjecture, which cannot be the basis of recovery.  See Hale v. Fawcett, 214 Va.

13

583, 585, 202 S.E.2d 923, 925 (1974) ("There can be no recovery where speculation or conjecture must be resorted to in order to determine what caused the damage complained of." (citing Barnes v. Graham Virginia Quarries, Inc., 204 Va. 414, 418, 132 S.E.2d 395, 397-98 (1963)).  For the same reason, we also reject what is essentially the same argument made by Forrest on brief, couched as an alternative argument, to the effect that his medical history known to Omega at the time he was rehired in 2005 - i.e., "without the results of that MRI" - was sufficient "in and of itself" for the jury to determine that he was "preclude[d]" from such employment.  (Emphasis in original removed).  Again, it would have been mere speculation for the jury to reach that conclusion on the evidence before it.[8]

---

[8] Forrest's substantial reliance on Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107 (1959), as support for his argument that the jury was entitled to infer causation, is misplaced.  In Sentilles, unlike the instant case, there was direct expert medical testimony to establish the causal link between the employer's negligence and the seaman's damages in his Jones Act case.  Id. at 107-09.  While there were conflicting opinions among the medical experts, at least two of them opined that the seaman's shipboard accident, for which the jury found the employer at fault, activated a previously latent tubercular condition.  Id. at 108-09.  One of the experts "posited the trauma [from the accident] and [the seaman's] pre-existing diabetic condition as the most likely causes of the aggravation of the tuberculosis."  Id. at 109.  Another expert opined that "the accident 'probably aggravated his condition,' though he would not say definitely."  Id.  In reversing the Court of Appeals for the Fifth Circuit in its decision to set aside the jury verdict in the seaman's favor, the Supreme Court reasserted the well-settled principle that "[c]ourts are not free to reweigh the evidence and set aside the jury verdict

14

CONCLUSION

For the above stated reasons, we conclude, as a matter of law, that there was no evidence of causation presented in the trial of Forrest's negligence claim against Omega under the Jones Act. See Code § 8.01-680. We will therefore reverse the judgment entered in favor of Forrest upon his jury verdict awarding him damages, and will enter final judgment in favor of the appellants.

Reversed and final judgment.

---

merely because the jury could have drawn different inferences or conclusions." Id. at 110. The Court then concluded that "the proofs here justified with reason the conclusion of the jury that the accident caused the [seaman's] serious subsequent illness." Id. In the instant case, we simply cannot ascribe such justification to the jury's verdict in favor of Forrest in the absence of any evidence tending to establish the element of causation.